UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Vorcelia OLIPHANT, | : |
|     Plaintiff, | : |
| | : |
| v. | : 3:02cv700(PCD) |
| | : 3:04cv274(PCD) |
| STATE OF CONNECTICUT | : |
| DEPARTMENT OF TRANSPORTATION | : |
|     et. al, | : |
|     Defendants. | : |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS AND ORDER**

Defendants move to dismiss both cases in this consolidated action.

**I.     Background**[1]

**A.     *Oliphant v. Dept. of Transportation*, 3:02cv700(PCD) ("Ol. I")**

On April 18, 2002, Plaintiff Vorcelia Oliphant filed a complaint in case number 3:02cv700(PCD) [Ol. I Doc. No. 1]. She filed an amended complaint on October 28, 2002 [Ol. I Doc. No. 26]. Her motion to file a second amended complaint was granted on April 4, 2003 [*see* Ol. I Doc. Nos. 62-65].

Plaintiff is employed by Defendant State of Connecticut Department of Transportation ("DOT"), and her complaint raised allegations against DOT, the Department of Administrative Services, as well as seven individuals in their official and individual capacities. She alleged discrimination on the basis of national origin, race and gender and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et. seq. ("Title VII"), discrimination under the Equal Pay Act of 1964 ("EPA"), as amended, 42 U.S.C. § 206 and CONN. GEN. STAT. § 46a-58 et. seq., violation

---

[1]     Familiarity with the numerous Orders and Rulings in this case is presumed.

of her rights pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601 et. seq. ("FMLA") and the §504 Rehabilitation Act, 29 U.S.C. § 794, violation of her right to Equal Protection under 42 U.S.C. §§ 1981 and 1983, and discrimination on the basis of a perceived illness under the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 ("ADA"). Defendants filed a motion to dismiss, which was granted in part and denied in part [Ol. I Doc. No. 98]. Plaintiff's Title VII claim against Defendant DOT for retaliation for filing various complaints and grievances and her § 1983 First Amendment retaliation claim for retaliation after she organized approximately thirty individuals to seek redress for lack of promotion based on allegedly unlawful premises survived [Ol. I Doc. No. 98 at 25]. All other claims were dismissed [Ol. I Doc. No. 98]. Plaintiff was granted leave to move for permission to amend regarding her Title VII failure to promote claim and Equal Pay Act claim against Defendant DOT [Ol. I Doc. No. 98 at 25]. She did not move for permission to amend on these claims.

This case has been plagued by Plaintiff's noncompliance with discovery orders. Pursuant to the Order on Pre-Trial Deadlines, discovery was initially scheduled to end on October 18, 2002 [Ol. I Doc. No. 3]. In the endorsement approving the parties 26(f) Report, the discovery deadline was reset to January 31, 2003 [Ol. I Endorsement, Doc. No. 10]. The parties' joint motion to extend discovery until March 28, 2003 was granted [Ol. I Endorsement, Doc. No. 36]. On March 6, 2003, Plaintiff sought another discovery extension [Ol. I Doc. No. 60], which was denied because "there is no demonstrated justification to link Plaintiff's compliance with discovery requested by Defendants to the latter's filing an answer to a possible amended complaint" [Ol. I Endorsement Doc. No.

60]. On March 25, 2003, Defendants sought to extend discovery for the limited purpose of taking Plaintiff's deposition, and their motion was granted in part, extending discovery until April 14, 2003. On April 11, 2003, Plaintiff once again sought a thirty-day discovery extension, which was granted, extending discovery until thirty days after a Ruling on the amended complaint [Ol. I Endorsement Doc. No. 69].

On May 20, 2003, Defendants filed a motion to compel responses to discovery and production [Ol. I Doc. No. 87]. The Court granted the motion, ordering Plaintiff "to comply with the rules of discovery by responding to all interrogatories and requests for production on or before May 27, 2003. Failure to comply may result in dismissal of Plaintiff's lawsuit with prejudice." Ruling on Def. Mot. to Compel [Ol. I Doc. No. 94]. After ruling on Defendants' motion to dismiss, the Court modified the scheduling order again, directing that "Plaintiff's compliance with filed requests for disclosure [are] to be filed on or before June 27, 2003" [Ol. I Doc. No. 99]. On June 11, 2003, Defendants filed another motion to compel, noting that Plaintiff had not yet complied with discovery requests dated November 26, 2002 [Ol. I Doc. No. 101]. After going through a detailed analysis of the discovery requests, the Court issued yet another Order, providing that

> Plaintiff is hereby ORDERED to comply with discovery, as set forth above, on or before August 1, 2003. The interrogatories and requests for production were served on November 26, 2002, giving Plaintiff ample time to gather such evidence and documents. Failure to comply may result in dismissal of her suit, in part or in whole, with prejudice.

Ruling on Pending Mot. and Ord. at 13 [Ol. I Doc. No. 111]. Because of continued noncompliance, yet another Discovery Order was issued, in which Plaintiff was ordered "to provide responses to Defendants' second set of Interrogatories and Requests for

Production on or before August 8, 2003" [Ol. I Doc. No. 115]. Plaintiff was again given clear unequivocal notice that "[f]ailure to comply may result in sanctions and dismissal of [her] case" [Ol. I Doc. No. 115].

Plaintiff filed yet another motion seeking an extension on the basis that "the deadline was inadvertently overlooked" [Ol. I Doc. No. 118]. Once again, the Court allowed her more time, clearly instructing that "Plaintiff is hereby ORDERED to provide responses to *all* outstanding Interrogatories and Requests for Production on or before August 11, 2003" (emphasis in original) [Ol. I Doc. No. 119]. Like the previous Discovery Orders, this Order included an unequivocal and clear notice that "[f]ailure to comply may result in sanctions and dismissal of [her] case" [Ol. I Doc. No. 119]. On August 13, 2003, Plaintiff filed another motion for leave to provide production, on the basis that her "voluminous" production documents "could not be mailed without a postal person seeing them first before mailing" [Ol. I Doc. No. 124]. Her motion was granted "to the extent it refers to the production of documents accompanying her motion" [Ol. I Endorsement Doc. No. 124].

On August 27, 2003, notice of Plaintiff's appeal was docketed [Ol. I Doc. No. 130], and on June 16, 2004, a mandate was issued re-vesting this Court with jurisdiction [Ol. I Doc. No. 154].

### B. *Oliphant v. Dept. of Transportation*, 3:04cv274(PCD) ("Ol. II")

On February 17, 2004, Plaintiff filed another complaint against the Connecticut DOT and six individual defendants, Michael Lonergan, James Connery, Frank Kaminski, Cory Dordula, Ines Feleciano, and Wanda Seldon [Ol. II Doc. No. 1]. Defendants' motion to consolidate, on the basis that the cases involve common questions of fact and law and similar witnesses, was granted absent opposition [Ol. II Doc. No. 11].

Plaintiff alleges that Defendants engaged in "collusion, a hostile work environment and retaliation against [her] for filing an appeal [in Ol. I] in the United States Court of Appeals for the Second Circuit" [Ol. II Doc. No. 1 at ¶ VIII]. She alleges violation of her rights under the ADA (Count One) and the Rehabilitation Act (Count Two), 42 U.S.C. § 2000e (Count Three), 42 U.S.C. §§ 1981, 1982, 1983, (Counts Four and Six), 1985(3), 1986, and 29 U.S.C. § 706(8)(B) and 794(a) (Count Four), and the FMLA (Count Five). She seeks compensatory damages, a declaratory judgment, damages exceeding $300,000 from the named defendants, retroactive employment advancement, punitive damages exceeding $300,000, court costs, and prospective relief.

Defendants move to dismiss Ol. II [Doc. No. 15].

### II. Standard of Deference to *Pro Se* Plaintiffs

When considering motions to dismiss a *pro se* complaint, courts must construe the complaint broadly and interpret it to raise the strongest arguments suggested. *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002). As a *pro se* party, a plaintiff is entitled to some deference in meeting pleading requirements. *See Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972). However, there are limits to

the deference to which a plaintiff- even one appearing *pro se*- is entitled. *Troni v. Di Milano*, 89 Civ. 3299, 1992 U.S. Dist. LEXIS 249, at *5 (S.D.N.Y. Jan. 14, 1992); *see also Peia v. United States Bankr. Courts*, 3:00cv2310 (PCD), 2001 U.S. Dist. LEXIS 14328, at *3 (D. Conn. May 22, 2001) ("This deference does not extend to satisfying service of process requirements"). "All litigants, including *pro se*s, have an obligation to comply with court orders." *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990).

### III.   Motion to Dismiss Ol. I (3:02cv700) for Failure to Comply with Discovery Orders

Defendants move to dismiss on the basis that Plaintiff has repeatedly fail to comply with discovery orders.

"Dismissal with prejudice [for failure to comply with discovery orders] is a harsh remedy to be used only in extreme situations . . . , and then only when a court finds willfulness, bad faith, or any fault on the part of the prospective deponent." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994) (quotation omitted). At the same time, "in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where . . . they are clearly warranted." *Id.* (quotation omitted). "The severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal." *Id.* (citing *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d at 766 (affirming dismissal of *pro se* action)); *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) (same).

Here, Plaintiff has been warned numerous times that failure to comply with discovery orders could result in dismissal of her case [*See e.g.* Ol. I Doc. Nos. 94, 111, 115, 119]. Over twenty months have passed since the November 26, 2002 discovery requests and Plaintiff has had ample time to respond to all discovery requests. Plaintiff has been given numerous opportunities to cure her discovery deficiencies.

In light of Plaintiff's continued noncompliance with this Court's discovery orders, it is hereby **ORDERED** that the parties shall show cause, in Courtroom 1, 141 Church Street, New Haven, Connecticut, at 9:00 a.m., September 22, 2004 as to why Plaintiff's case should not be dismissed because of her repeated failure to comply with Court orders.

**IV.     Motion to Dismiss Ol. II (3:04cv274)**

Defendants move to dismiss Oliphant II on the following grounds: (1) the Court lacks subject matter jurisdiction over certain of Plaintiff's claims because she has failed to exhaust her administrative remedies; (2) the Eleventh Amendment bars certain of her claims; (3) her 42 U.S.C. § 1981 claim is barred because 42 U.S.C. § 1983 is the exclusive federal remedy for the alleged violations by state actors; (4) her § 1983 claim against the individual defendants must be dismissed because Title VII is the only remedy; (5) the individual defendants cannot be held liable under Title VII, the ADA, § 504 of the Rehabilitation Act, and the FMLA, and do not have adequate personal involvement to be held liable under § 1983; (6) Plaintiff's claims brought under the Constitution and § 1983 fail to state a claim; (7) her § 1983 claims are time-barred; (8) her § 1983 claims fail to state a cause of action; (9) her 42 U.S.C. § 1985(3) and § 1986 claims fail to state a cause

of action; (10) her claims under § 1982, § 1985(3), and § 1986 are time barred; and (11) Defendants are entitled to qualified immunity.

### A.      Preliminary Matter: Duplicate Allegations

At the outset it is noted that many allegations in Oliphant II are identical to those made in Oliphant I. Although Plaintiff purports to add some additional parties in the second suit, many of her underlying factual allegations remain the same, including but not limited to the following:

| *Oliphant I* (Second Am. Compl.) [Doc No. 62] | *Oliphant II* (Am. Compl.) [Doc. No. 10] |
| --- | --- |
| "Plaintiff, since about 1995 is experiencing ongoing discriminatory practices and unfair treatment (DOT Named Defendants). ¶ I | "Since 1995 Plaintiff experienced discriminatory treatment." ¶ IX(A) |
| "Plaintiff raised [the] issue regarding her unequal treatment and ongoing discriminatory practices first with her immediate supervisors." ¶ J | "Plaintiff raised the issue regarding her unequal ongoing discriminatory practices first with her immediate supervisors." ¶ IX(B) |
| "About 1995 Plaintiff informally addressed issue of her treatment from within her office with an Affirmative Action Officer." ¶ K | "About 1995 Plaintiff informally addressed issue of her treatment from within her office with an Affirmative Action Officer. Since 1995 Plaintiff experienced discriminatory treatment." ¶ IX(C) |
| Plaintiff, about September 1996 began being denied promotions which began on the pretext of having to pass an exam." ¶ N | "Plaintiff is being victimized by employees of the department and has been experiencing retaliation on going from 1996 when she addressed employment testing issues with the Department of Administrative Services." ¶IX |
| " . . . Also, about January 2001 through April 2001, Plaintiff organized . . . over 30 individuals to initiate legal redress for the lack of promotion based on gender and race or ancestry and the disproportionate impact of minorities in the Department of Transportation." ¶ L | "Also, in the beginning of year 2001, after having consulted an attorney Plaintiff organized on her own time and outside of work hours, over 30 employees and ex-employees to address discrimination and issues of lack of promotion and other issues of disparate impact affecting the department's minorities and females employees and ex-employees. Retaliation intensified at this time." ¶ X |

| | |
|---|---|
| "Since the Plaintiff's actions in paragraph 'L,' the defendant, DOT, since that time and ongoing, has orchestrated every aspect of its employment practices and policies and procedures in relation to the plaintiff, to block plaintiff's progression in her career ladder and block remedy for matters of which plaintiff complained that also entails changing plaintiff's duties in anticipation of any claims the plaintiff would pursue for discrimination and the defendant's treatment of the plaintiff with regards to the defendant's perception of an illness (DOT named defendants)."<br><br>¶ P | "Since the plaintiff's above actions, the defendant has since that time and ongoing, orchestrated every aspect of its employment practices and policies and procedures in relation to plaintiff, to block her progression in her career ladder or promotion through any tests she has passed and has also attempted to block remedy for matters of which plaintiff complained about. This includes changing plaintiff's duties in anticipation of any claims the plaintiff would pursue for discrimination and the defendant's treatment of the plaintiff with regards to the defendant's perception of plaintiff's illness."<br><br>¶ IXF |
| "Prior to and specifically since attaining permanent employment status with the Defendant, DOT, in December 1996, every job advancement or advancement opportunity thereafter . . . the [Defendant] has attempted to block or give the appearance that it has attempted to assist in the advancement of the plaintiff's career, which is only pretextual against any accusation plaintiff would raise for their discriminatory practices towards her. Such encompasses but is not limited to: promotions through normal procedures and practices; selection and financial support for job specific training; leaves of absences as related to access to sick time usage protection as provided under federal and state law; job recruitment and advertising procedures; organizational structures; and job assignments. All are due to 1) the defendant's perception of an illness from which the plaintiff has suffered, of which the defendant is privy . . .<br>¶ Q | "Plaintiff since attaining permanent employment status with the Defendant in December 1996 has continued to attempt[] to block or give the appearance that it has attempted to assist in the advancement of the plaintiff's career, which is again pretextual against any claims plaintiff would raise for the defendant's discriminatory practice against her. Such encompasses: promotions through normal procedures and practices; selection and support for job specific training; leaves of absences as related to access to sick-time usage provided under Family Medical Leave Act for a plaintiff's own illness."<br><br><br><br><br><br>¶ IXG |

District courts may administer their dockets in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976). "Accordingly, a federal court may dismiss a suit for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in . . . the same federal court." *Curtis v. DiMaio*, 46 F. Supp. 2d 206,

215 (S.D.N.Y. 1999) (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). "[G]enerally, a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Id.* (quotation omitted). To find a suit duplicative "[t]here must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same." *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 715, 20 L. Ed. 666 (1871). "For a second action to be duplicative, it is not necessary that the parties be identical." *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 664 (S. D.N.Y. 1997) "Rather, if the parties 'represent the same interests' the court may determine the second action to be duplicative." *Id.* (*citing The Haytian Republic*, 154 U.S. 118, 124, 14 S. Ct. 992, 38 L. Ed. 930 (1894).[2] As noted above, Plaintiff's complaints in both cases stem from the same underlying facts, and she apparently is attempting to litigate her claims piecemeal. To the extent she attempts to raise claims already raised in Oliphant I, such claims are **dismissed** pursuant to the Ruling in Oliphant I. As noted below, the only new claim she alleges is retaliation for filing an appeal with the Second Circuit.

### B. Failure to Promote

Equally troubling is Plaintiff's attempt to resurrect a failure to promote claim in Oliphant II. Her complaint in Oliphant I had included vague allegations about failure to

---

[2] Moreover, the Ruling dismissing many of Plaintiff's allegations in Oliphant I would apply to the similar claims in Oliphant II, and that Ruling provides an additional basis to dismiss the duplicative claims that were previously dismissed.

promote [See Oliphant I Amended Compl. ¶ M). In the Ruling on Defendants' Motion to Dismiss in Oliphant I, the Court stated that

> Plaintiff filed her complaint with the EEOC on or about April 10, 2001, therefore the 300-day period dates back to approximately February, 2000. Plaintiff has failed to plead any denial of promotion within the 300 day period extending back to February, 2000. Her allegation of failure to promote in September, 1996 is barred by the statute of limitations. However, her complaint alleges that in "about September 1996 [she] *began* being denied promotions." *Pl. Sec. Amended Compl.* ¶IVM (emphasis added). She does not specify dates of any post-September 1996 dates of occurrences of failure to promote.
>
> Accordingly, Plaintiff's claim under Title VII for failure to promote is dismissed as time-barred. However, she is granted leave to move for permission to amend, whereby, if she chooses to amend, she shall specify her claims of promotion denial in or after February, 2000, with specific facts and dates. Such motion for permission to amend, including her proposed amendment, must be filed with the Court on or before June 24, 2003.

Ruling on Def. Mot. to Dismiss at 15 [Doc. No. 98]. Moreover, the Conclusion section of that Ruling clearly reiterates that Plaintiff was granted leave to move for permission to amend on the failure to promote claim:

> Commensurate with the holding herein, Plaintiff is granted leave to move for permission to amend the following claim[]: (1) Title VII claim against Defendant DOT for failure to promote . . . . Should Plaintiff wish to move for permission to amend, in her motion she shall provide specific information as to the dates of the conduct complained of, the parties claimed against, the positions involved, and she shall comply with all requirements set forth in this Ruling. Her proposed amendments are not to be in any way legally deficient, either procedurally or substantively, as identified in the numerous Rulings of this Court to date. Any such motion and supporting memorandum shall be filed with the Court on or before June 24, 2003.

*Id.* at 25. Plaintiff did not file for permission to amend, thereby abandoning her allegation of failure to promote. Now, in Oliphant II, she apparently attempts to circumvent the Ruling in Oliphant I and her failure to move to amend to file a failure to promote claim in that case, by alleging failure to promote, whereby she alleges that

11

> Plaintiff is being victimized by employees of the department and has been experiencing retaliation on going from 1996 when she addressed employment testing issues with the Department of Administrative Services. . . . She has been denied all promotions since this time. Including a position in 2002 for Legislative Liason Manager to which a white male was promoted to the position when the department had a[n] affirmative action quota for minority women managers to fill.

Am. Compl. ¶ IX [Oliphant II]. As noted in the table above, in Oliphant I she had alleged that "about September 1996 [she] began being denied promotions which began on the pretext of having to pass an exam." Second Am. Compl. ¶M. Both complaints allege failure to promote stemming from employment testing examinations. Plaintiff was given an opportunity to amend her complaint in Oliphant I; she abandoned that claim by failing to seek leave to amend that complaint, and shall not now be permitted to circumvent that ruling and her failure to move to amend in Oliphant I by, almost a year after her deadline to file for leave to amend had passed, try to raise the failure to promote claim stemming from the same underlying facts in Oliphant II.

    **C.**    **Retaliation for Filing Appeal in Oliphant I**

The only apparent new claim Plaintiff alleges in Oliphant II is that Defendants retaliated against her for filing her appeal with the Second Circuit in Oliphant I. [See Am. Compl. Doc. No. 10 at VIII ("[t]his matter involves, most recently collusion, a hostile work environment and retaliation against Plaintiff for filing an appeal for injunctive relief in the United States Court of Appeals for the Second Circuit . . . . on August 4, 2003")].

Defendants argue that Plaintiff has failed to exhaust her claims under Title VII and the Connecticut Fair Employment Practices Act ("CFEPA"). Def. Mem. at 5 [Oliphant II Doc. No. 16]. Defendants note that on March 18, 2004, Plaintiff filed a CHRO complaint. "A district court only has jurisdiction to hear Title VII claims that

either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). "This exhaustion requirement is an essential element of Title VII's statutory scheme." *Id.* The Second Circuit has recognized three different instances where claims not alleged in an EEOC charge are sufficiently related to provide jurisdiction: (1) where the claim concerns conduct which would fall within the reasonable scope of the EEOC investigation; (2) where the claim alleges retaliation for filing the EEOC charge; and (3) where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Id.* at 1402-03. "[A] complaint alleging employer retaliation against an employee who has opposed discrimination may be considered 'reasonably related' to allegations already raised with the EEOC." *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1208 (2d Cir. 1993); *see also Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir. 1980) ("The issuance of a 'right to sue' letter, although not constituting an open license to litigate any claim of discrimination against an employer, does permit a court to consider claims of discrimination reasonably related to the allegations in the complaint filed with the EEOC").

Here, Plaintiff's allegation that she was retaliated against for filing an appeal in the Second Circuit in Oliphant I is reasonably related to her prior claims, and therefore this issue is properly before the Court.

### V.    Effect of Oliphant I Ruling Barring Evidence on Oliphant II

In the Ruling on Pending Motions and Order [Ol. I. Doc. No. 111], Plaintiff was barred from offering evidence on certain issues because of her noncompliance with Discovery Orders. [See Ol. I. Doc. No. 111 at 4-14]. This Ruling will stand as the law of Oliphant II (3:04cv274), and therefore Plaintiff is barred from offering evidence on these issues in Oliphant II.

### VI.   Plaintiff's Request to Speak with Counsel

In her "Reply to Def. Reply to Pl. Mot. to Renew Mot. in Opp. to Def. Renewed Mot. to Dismiss" [Doc. No. 159], Plaintiff states that

> she is not a trained attorney and there is nothing protracted in plaintiff admitting her lack of understanding of the questions posed. Plaintiff is not fully understanding how to detail the damages and requests that she is permitted to confer with counsel or given opportunity to revisit this item on this topic to know exactly how the damages is to be addressed. Plaintiff is not a trained attorney.

Doc. No. 159 at 5. For approximately eight days of this protracted litigation, she had engaged the services of Attorney James Brewer, who entered an appearance on January 8, 2003 [Doc. No. 34]. On January 23, 2003, Attorney Brewer filed a motion to withdraw his appearance, noting that on January 16, 2003, "[P]laintiff notified [his office] that she no longer wished to have [Brewer] represent her . . . and requested that [Brewer] file a withdrawal of his appearance." Pl. Mot. to Withdraw App. at 1 [Doc. No. 39]. Plaintiff has the right to consult with an attorney if she so wishes, rather than proceed *pro se.* Her claimed of lack of understanding Defendants' discovery requests is without merit, as her history in this case reflects simple and repeated noncompliance with discovery orders.

### VII. Conclusion

As set forth above, Defendants' motion to dismiss in Oliphant I, 3:02cv700 is held in abeyance in light of the **Order to Show** cause in Court on September 22, 2004 at 9:00 a.m. why this action should not be dismissed due to Plaintiff's noncompliance with numerous discovery orders.

Defendants' motion to dismiss in Oliphant II, 3:04cv 274 [Doc. No. 15] is **granted in part and denied in part** as set forth above. Plaintiff's claim of retaliation for filing an appeal with the Second Circuit survives.

Plaintiff's motion for leave to file a sur-reply and Defendants' motion for leave to file an objection [(Ol. I 3:02cv700 Doc. Nos. 157 & 160] are **granted**.

SO ORDERED.

Dated at New Haven, Connecticut, August  21 , 2004.


/s/
Peter C. Dorsey
Senior United States District Judge