# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED

2005 JUL -8 P 1: 23

VORCELIA OLIPHANT,
    Plaintiff,
    vs.
STATE OF CONNECTICUT DEPARTMENT OF
TRANSPORTATION, ET AL.
    Defendants

CIVIL NO. 3:02CV0700(PCD)

July 7, 2005

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PER RULE 56(a) (2)

I.      Defendants submitted a motion and memorandum to dismiss pursuant to Federal Rules of Civil Procedure 56 (a)(1). In response to this motion plaintiff submits this brief in opposition to the defendants' motion to dismiss.

## PLAINTIFF'S LOCAL RULE 9(C)2 STATEMENT

### II. Facts:

Fact 1: Admit

Fact 2: Deny, it's plaintiff's understanding that she was placed on Family leave on or about September 15, 2003 (Ex. 1)

Fact 3: Admit

Fact 4: Deny, plaintiff is appealing the decision (Ex. 2, 2A)

Fact 5: Deny, there were additional things that plaintiff raised concerns about (Defendants Ex. 1, Plaintiff's Responses to Defendant's Interrogartories, dated March 6, 2003, unnumbered page 10 Answer # 24).

Fact 6: Deny, a grievance regarding reclassification of her position in February 2001, (Exhibit 4)

Fact 7: Admit

Fact 8: Admit

Fact 9: Admit

Fact 10 Admit

Fact 11 Admit

Fact 12: Admit

Fact 13 Admit

Fact 10(could this be 14) Admit

Fact 15: Deny: The derogatory information defendants attempted to have on plaintiff's employee record by making pretext regarding sick leave, tardiness, omitting to place info. On outlook calendar and putting in leave slips is greivable under certain conditions. (Ex. 7)

Fact 16 and 17: Admit in part. Plaintiff went about creating more situations than those mentioned here for excuses and reasons to "counsel" and reprimand plaintiff.

Fact 23: Deny , plaintiff conducted her self as was the office practice and custom. She was not "found taking the leave slips" as she did not hide anything she was doing, and it was done openly because leave slips were made available in the event the Administrative secretary was not in.  The fact-finding to which plaintiff was subject and the discipline there of were extreme in light of the circumstances (Ex. 10, Ex.14, page 3 Paragraph 1,5, page 5, paragraph 1, 5; Ex. 15, paragraph XX, XXI, XXXII)

Fact 18: Cannot admit or deny

Fact 19: Can not Admit or deny

Fact 20 Deny Defendants may be confusing computer print-out with leave slip count.

Fact 21:Deny: plaintiff had requested information regarding dates of alleged tardiness, etc and her boss was aware that she would be reviewing the dates, this was directly related to her work as it was a matter related to her employment as her service rating was coming up and her bosses were trying to find things to document on her service rating. There was nothing to indicate that reviewing derogatory information to be entered in an employee's file is not related to her work. Plaintiff had always reviewed hours at work. (Ex.26). Defendants exhibit 2E was the information defendants used at their meeting on 8/21/03. ~~Plaintiff was~~ given to the plaintiff to confirm times and dates It does not show the amount of time plaintiff is alleged to be tardy. The department had a policy that if you arrive late you stay late. Five – ten minutes was not considered tardy and individual just made-up time (Ex. 7, Exhibit 32 Affidavit of P. Macher). This was just a pretext which is why defendants did not let me have the information when I requested it. On the Ride Your Bike to Work Day, May 25, 2001. Everyone in the unit knew I was participating.

*[handwritten annotations: NOT / DATES AND TIMES For "tardiness" were never mentioned nor (Aprt Fac w/ plttf / for Alleged tardiness (VT)]*

Fact 22: Deny, plaintiff testified to the truth at the fact-finding as to where the leave slips are stored, which is not in secretary's desk.

Fact 24: Plaintiff admit that there was never a practice of having to requests the leave slips as has been put forth in the fact-finding. Leave slips were made accessible as were time sheets, to accessible to everyone in the office.

Fact 25 and 26-1 Deny, apart from her employment, plaintiff on her own time within the first three months of 2001 organized 30 employees to address issues of discrimination and promotion among women and minorities.

Fact 25 and 26-2: Admit

3

Fact 26 Admit

Fact 27 Deny, treatment by plaintiff at this time began to escalate. Many false accusations were levied against plaintiff regarding putting info on outlook calendar, claims of tardiness, and sick leave usage, etc.

Fact 28 Deny : plaintiff understands personal knowledge to mean first hand knowledge. Defendants were not invitees to the meetings nor received mailings, Plaintiff does believe they had second-hand knowledge of MIA and its purpose.

Fact 29: See number 28 above.

Fact 30 If "word- of- mouth" or rumor is considered first hand knowledge plaintiff believe they were aware of the MIA meetings. Otherwise, by these means of rumor, "word of mouth" etc., Plaintiff believes they were aware of the group and its purpose and is what triggered their actions against her.

III Legal Arugument:

B. **Defendant's premise that " Plaintiff cannot establish a prima facia case for Title VII retaliation"**

Plaintiff believes defendants above premise is without merit. Plaintiff was retaliated against after she formed the group Minorities In Action to address lack of promotions for minorities and women at the department of transportation. The group met between January  the last meeting was in Mid to late March of 2001 ( Ex. 19a, Meeting Agenda of MIA dated March 13, 2001). Plaintiff takes exception to court's ruling no. 111 pursuant to Fed. R. Civ. P 46, and make an offer of proof if she could provide it of an emails dated between January 24 through January 25 between herself and Kenneth Fargnoli regarding training from which she was excluded but such training she attended

4

in the past. Email dated March 8, 2001 4:00 pm from plaintiff to Arthur Gruhn, Administrator. Therein plaintiff expresses her desire to continue with legislative work. It was apparent to her that she had been omitted from this process as her other duties too had been taken away as well. Emails between April 3, 2001 through On March 20, 2001 Plaintiff's boss makes an offer for a position that is both corrupt and not in accordance with how reclassifications or new positions are handled. (Ex.20, CGS sec 5-226). Also during this time plaintiff was not permitted to attend the project engineer classes when that had not been the case when plaintiff began working with the department (January 24, 2001- January 25, 2001 emails to and from plaintiff to Fargnoli regarding the matter.

On April 2, 2001 plaintiff filed a complaint with Commission on Human Rights and opportunities, On April 3, 2001, 9:07 am, defendants email Vorcelia inquiring about the March 20, 2001 "Opportunity to try new position. Email from Brian Castler dated for Tuesday April 3, 2001 at 9:07 AM, cc'd Kenneth E. Fargnoli, Arthur W. Gruhn, subject: OPPORTUNITY TO TRY NEW POSITION. wherein he refers to Ken Fargnoli making a quasi-offering for a Transportation Engineer II position on March 20, 2001(seven days after MIA third meeting), it mentions Jay Doody, union steward as the go between and how Castler was aware he was on vacation till April 9th and yet how Castler needed an answer by April 9, 2001. 3) Plaintiff email response dated April 3, 2001, 9:47 AM to B.Castler plaintiff mentions her concern over the consequences if they are not satisfied with her work within the thirty day conditional trial period they propose in the quasi offering.

4) Email dated April 3, 2001 10:59AM Castler replies that plaintiff would return to old position if they are not satisfied within the 30 days try-out time.

5

5) April 4, 2001 4:24 PM Plaintiff email reply that she was expecting Jay Doody, union representative be present for any meeting regarding the offer and how he had informed her when he was last at the office on or about March 21, 2001 that he would be on vacation until April 9, 2001 and **would be** available to meet when he returned. Plaintiff mentions how she believed defendants were aware of Doody's vacation , mentions how it is they insist on a reply by April 9th. She request if it could wait until Jay returns.  6) Email Notice: Defendants Do not read plaintiff's reply until April 9, 2001at 6:51 AM, 7) Castler reply to plaintiff's email until April 9, 2001 at 7:37 AM, stating that they can not hold off any longer going out to fill *(the position)* and ask plaintiff whether or not she was interested. 8) Email response from plaintiff dated April 9, 2001 at 8:58 AM she states that in light of everything going on she decline and thanked him.

9) Oath of Jay Doody CHRO No. 0110381(Ex 20)  dated July 19th 2001 stating the offer of the position offered out on July 5, 2001, about three months after defendants' claim for immediate reply from plaintiff ; because they needed to "offer out the position, and oath is of defendant's repeated violations made against plaintiff regarding State Statutue 5-227a and DAS General Letter 226 and also he states the proper method for reclassification of position, and to do what defendants were doing was in violation of state regulations, he also stated how the one month informal try-out of the position was illegal.

These two actions occurred within one day of plaintiff filing a CHRO complaint (filed April 2, 2001) and within a few days of the MIA final meeting (about March 13, 2001).  Plaintiff holds that this is not mere coincidence and therefore there is genuine issue to be tried. **Lizard V. Denny's, Inc**. 270 F.3d 94 (or 97) (2nd Cir 2001).  If there is

significant sufficient circumstantial evidence on which to build a case, it is for the jury to determine what inferences can be drawn from that evidence. Also, Plaintiff need not prevail on her Title VII discrimination claim or have opposed an action that in fact violated Title VII to win a retaliation claim; all that is required is that she reasonably believed in good faith that the practice she opposed violated Title VII. Civil Rights Act 1964 **Alexander v. Gardner-Denver Company** 949 S. Ct 1011(1974) Sec. 704(a) as amended, 42 USCA Sec. 2000e-3(a) –id.

Adverse employment actions it has been decided include discharge, refusal to hire, refusal to promote, demotion, reduction in pay and reprimand **Rutan v. Republican Party,** 497 U.S. 62, 75, 111 L. Ed. 2d 52, 110 S. Ct. 27299(1990). The second circuit ruled that the district court erred when it held that a plaintiff has not suffered an adverse employment action unless he or she has "suffered dismissal, reduction in pay, or demotion in rank," **Bernheim v. Litt**, 79 R.3d 318, 327(2nd Cir. 1996), this case holds that lesser action may also be considered advese employment actions. ibid  79 F.3d at 324-26, which may include negative evaluation letters, express accusations of lying, assignment of lunch duty, and assignment to classroom on fifth floor. In plaintiff's case this would have been, having to place information on outlook calendar as setforth in plaintiff 56(a)2 statement of facts, the campaign of "counseling' for alleged tardiness or sick leave. Being accused of lying about what was placed on the outlook calendar when Plaintiff continually requested that it get checked Connery, supervisor, only said he would as a threat that plaintiff was lying. Which plaintiff insisted that he do it because it would finally get her supervisor to have the computer people check her computer regarding the problem that she complained of things not showing on her calendar but no

one did nothing about but continually attempted to reprimand her.(Ex. Exhibit 11, 12, 13, particularly email dated October 11, 2002 8:44 Am from Oliphant to Connery.) See Plaintiff's 56(a)(2) statement of facts. There is genuine issue for trial.

Plaintiff's experience of adverse action related to her involvement organizing the MIA group was a substantial motivating factor in the departments campaigns to appear as if they were promoting plaintiff when they were not, and it is at this time they begun to attempt to document poor service attendance.  Plaintiff believes the group's purpose, to address lack of promotion among minorities, and her protected speech concerning these matters was what prompted the defendants to retaliate against her as they did because prior to this plaintiff had not experienced the problems from the defendants as setforth in her 56(a)(2) statement of facts that she encountered.  **Mount Healthy City,** 429 U.S. at 287.  Causation can be established either directly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus. **Sumner v. United States Postal Serv.**, 899 F. 2d 203, 209, (2nd Cir. 1990)

**Defendants claim that the plaintiff did not suffer an adverse employment action regarding her written or oral counseling.**

The oral counselings were reprimands which qualify as adverse actions, **Kaluczky v. City of White Plains,** 57 F. 3d 202, 208(2nd Cir. 1995), **Rutan v. Republican**, ibid. Plaintiff believes were it not for her activity for organizing MIA and filing different complaints the defendants would not have gone on the campaign of oral counselings and other bad treatment that they did. **Wanamaker v. Columbian rope Co.,** 108 F.3d 462, 466 (2nd cir 1996) In a title VII action, court found that the plaintiff met his

*B*

prima facie burden and arguably established ans adverse employment action, albeit thin, when he alleges he was transferred from an elite department to a less prestigious one. In plaintiff's case she pursuant to federal rule of Civ P. 46 takes exception to the court ruling NO. 111, and make offer of proof an email dated March 8, 2001 4:00pm from Oliphant to Gruhn noting her lessen role in the legislative process that she was responsible for was null, (Ex. 22, email from plaintiff to Arthur Gruhn), plaintiff passed the exam for legislative manager about November 2001 (Exhibit 34) In spite of there being only 1 African-American female manager and a total of 8 female managers out of Seventy-seven available, the position was not offered to her (Ex. 23). In addition, at about this time (June 5, 2001) plaintiff's schedule was changed to work at a different location on a claim that her duties were reduced to clerical tasks which involved stamping hundreds of documents with adhesive labels related to a claim. The tasks was called "bates stamping" in September plaintiff found that this work was becoming disruptive to the work she was personally responsible to others for its completion.(Ex. 25, email from Wiecki to Connery to plaintiff). Plaintiff responded in the email explaining how the menial task was disruptive. Thus plaintiff's conditions were more than a mere inconvenience for the plaintiff but was more disruptive to the plaintiff as shown above and constituted materially adverse change in the terms and conditions of her employment. Sanders v. New York City Human Resources Admin., 361 F. 3d at 755 (2nd Cir 2004) quoting Terry v Ashcroft, 336 R.3d 128, 138(2nd Cir. 2003). Plaintiff has genuine issue for trial on these matters.

**Defendants' position that plaintiff can not prove that she was constructively discharged.**

9

Although plaintiff's health failed as a result of the extreme stress from the hostile environment of her work place and co-workers, the second circuit ruled that the district court erred when it held that a plaintiff has **not** suffered an adverse employment action unless he or she has "suffered dismissal," **Bernheim v. Litt**, 79 R.3d 318, 327(2nd Cir. 1996), this case holds that lesser action may also be considered adverse employment actions.ibid 79 F.3d at 324-26, which may include negative evaluation letters, express accusations of lying (Ex. 13 emaildated October 11, 2002, 9:45). Plaintiff has been subject to many of these.

The courts, as shown above, have determined that dismissal or constructive discharge is not necessary to prove adverse employment. Pursuant to Fed. R. Civ. Procedure 46, plaintiff takes exception to the court's ruling No. 111 and offer of proof the following : If the same is not barred the emails are attached(Ex. 24, emails between Peter Macher, Mike Lonergan, J. Connery and plaintiff). On August 4, 2003 plaintiff filed for an Appeal in the second circuit court for injunctive relief, on August 6 plaintiff received a reply to her July 24, 2003 email requesting to be removed from the temporary work she was assigned as she was told would happen by the Spring 2003. On August 6, 2003 her supervisor who is high in the Office and bureau hierarchy began trying to make it appear that the plaintiff was refusing to meet with him **Richardson v. Department of Correction, 1997 Dist. LEXIS 20719** (2nd Cir)and make more of the issue of plaintiff requesting a meeting on or about July 21, 2003 but led to August 13, 2004 events thereafter. Plaintiff's boss did not respond to **her request for meeting until after August 6, 2003,** he was in the office during this time.. Pursuant to Fed. R. Civ. Procedure 46, plaintiff takes exception to the court's ruling No. 111 and offer of proof the

*10*

following : If the same is not barred the emails are attached. On August 7, 2003 plaintiff emailed saying that her work had not changed and how she was willing to continue with what was discussed in the last meeting to finish by September as agreed rather than earlier as plaintiff had requested in the meeting on or about July 18, 2003 two days after she filed for appeal. On August 13, 2003 plaintiff responded to his email that she was available to meet leaving it up to him when he wanted to meet to discuss my workload. On the following day, **and** on August 14, 2003 supervisors' claimed to want to meet but they had twisted the purpose of the meeting now claiming that it was for counseling, they were vague concerning the counseling and each time plaintiff asked the reason was never fully made known. They claimed to have grounds to reprimand plaintiff (Ex. The fact that on August 14, 2003 plaintiff had to leave work due to illness from defendants' impromtu meetings for alleged reprimand and even then as has been done in the past defendants refused her the medical forms necessary to be taken to her doctor (see plaintiff's statement of facts No. 27, ex. 17 ). Plaintiff's doctor documented that plaintiff's problem was stress from her work in 2003. (Ex.33, Medical Certificate from Mark Josel for, also report from Dr. Bolla ) plaintiff in 2002 was diagnosed as early as 2002 as suffering from somotafoam, illness that Plaintiff's job was making her sick. The retirement boards' decision is under reconsideration and pending more medical information. The medical board has found that plaintiff is disabled from performing the duties for which she received her college training. Thus there is material issue of fact. Plaintiff supervisor, Mike Lonergan was sufficiently high level in the hierarchy in the department, he did not use his authority to stop the harassment but he perpetrated it as did plaintiff's immediate supervisor. Plaintiff early in 2003, January, 30 filed an affirmative

action complaint( Ex. 6) to seek relief from the hostile environment to which she was

being subjected., the Affirmative action office only "toyed" with plaintff's complaint and *(Ex. 6 )*

stalled processing it but attempting to make it appear that if it was the plaintiff who was

uncooperative. They followed their pattern same from a previous complaint plaintiff filed

in January 2001. (See plaintiff statements of facts paragraph nos. 6, 13). The harassment

was prevalent immediately following plaintiff filing an Appeal on August 4, 2003 on

August 6, 2003 plaintiff's boss wanted to meet with her when her request previously

received no attention. (Ex. 24) plaintiff was made to remain on temporary work

permanently and defendants again went on a reprimand campaign against the Plaintiff.

Plaintiff's appeal sought relief of the hostile treatment plaintiff was experiencing in the

Office of Construction, from the defendants supervisors and the Affirmative action

office who did nothing to intervene when their assistance was sought by the plaintiff. All

plaintiffs activities were protected activities, She complained about what she perceived to

be discriminatory conduct, filed complaints and filed for injuctions, appeals and this law

suit **Van Zant v. KLM Royal Dutch Arilines,** , 80 F. 3d 708 at 713.(2nd Cir. 1996)

Defendants actions were deliberate and not simply negligent because as early as January

2003 plaintiff in her complaint to affirmative action informed them that defendants of the

effects their actions were having on her, Whidbee v. Garzarelli food Specialities, Inc. and

documentation from plaintiff's doctor provided to the department said the same, yet they

did not cease from the harassment. There are genuine issues for trial. Though plaintiff

has not had discovery, and subpoenas of reluctant witnesses have been quashed, plaintiff

will have admissible evidence at trial because plaintiff witnesses were reluctant to

provide statements and affidavits could not be obtained from witnesses without

subpoenas to depose them. The subpoenas were quashed but the same can be subpoena to testify at trial. Catrett v. Celotex Corp., 826 F.2d 23 (D.C. cir 1987). The second circuit has determined that "… a pro se litigant…is entitled to trial on even a tenous legal theory supported by the thinnest evidence **Phillips v. Girdich**, 2005 US App. LEXIS 8692, Saluhuddin v. Cuomo, 861 F.2d 40, 42 (2nd Cir 1998) Wyde , 360 F.3d at 80. Plaintiff has demonstrated that defendants position is disputed and that there are genuine issues for trial.

### Defendants claim that defendants offer a legitimate, non-discriminatory reason for plaintiff's five day suspension…

Defendants assertions herein are pretext for the true discrimination they perpetrated. The alleged grounds for the fact-finding for plaintiff was a pretext. Defendants began a campaign of oppressive surveillance and a significant increase of reprimands of which the fact-finding was pinnacle. This was a pattern after any of plaintiff's activities in a protected activity. Six years with no history of reprimands and suddenly plaintiff is accused of misconduct subsequent to filing a complaint . Such was the case with the alleged grounds for the September 26, 2003 fact-finding. On August 4, 2003 plaintiff filed appeal for injunctive relief against the defendants. On August 6, 2003, two days following the filing of the appeal the defendants began taking action against the plaintiff. This went on till August 21 when they tried to find grounds to reprimand plaintiff. They attempted to use time off and time not on calendar as a pretext. Plaintiff did as she always has and verifies the times and dates (Ex. 26) On this occasion prompting the fact-finding plaintiff did the same on August 22, 2003. However, this time she was accused of doing this on state time using state equipment. .

*13*

The said fact-finding stem from plaintiff attempts to defend her employment reputation against the defendants many efforts to defame it through pretext "counseling" to reprimand her and enter derogatory information in her employee file. Plaintiff submits the minutes from the fact-finding which were not accurately recorded or transcribed. None the less it is the one evidence that the plaintiff can use. In the fact-finding are many contradictions regarding the leave slip policy for which plaintiff was subject to fact-finding Plaintiff submits the affidavit of Timothy McGuane, a disinterested union steward(Ex. 10), he derived from his knowledge of these proceedings and what was being testified to at the hearing, he concluded that the grounds for the fact-finding were without any foundation and that the penalty was extremely excessive.

Plaintiff adds that the attendees, both mediators and witnesses, with the exception of union stewards, are all employees of the Department and in particular the Office of Construction. Plaintiff contends that they are not impartial decision makers nor are the witnesses impartial in this matter. Defendants have not supported their position that the action by this fact-finding was none discriminatory. All attendees, with the exception of the secretary who was not present on the day of the alleged violation, all claim to be privy to plaintiff actions on that day. All of these individuals are Caucasian and share mutual interest for career enhancement as they are all employees of the department and the office of construction. There are others who were said and were seen to have witnessed the plaintiff on the day of the alleged violation but none of these individuals were witnesses at the fact-finding. The witnesses who testified as witnesses, with the exception of Mr. Kaminsky, are among the lowest ranking in DOT wage earnings in unit 501 Office of Construction.

Plaintiff and her union representative are minority. There were no witnesses to present testimony for the plaintiff at the fact-finding and neither does she know if any could have been called in her behalf. The fact-finding was a pretext, plaintiff has always been permitted to clear up any discrepancies with her employment hours during work time and on computer and office equipment, (Ex. 26). The same is what plaintiff was doing on that occasion. Leave slips contrary to what witnesses have said, were always available and made accessible in case the secretary was not available. This is why this information never had to be requested through freedom of information or otherwise. And the copying of others leave slips was to show that others were not having to submit them as was the plaintiff. There appeared to be nothing confidential on them. Plaintff is a dedicated employee and conscientious of her work record, and gets along well with others. Her service ratings attest to this (defendants exhibit No. 2B, 2C). Thus, defendants began a campaign to blemish plaintiff's work record with aim toward firing her which is the purpose of a fact-finding and the many alleged pretext "counseling" for tardiness and outlook calendar and sick leave usage and alleged insubordination (Ex. 6)

There have been far more egregious acts committed in the department that plaintiff can present at trial because her subpoenas of non-parties per 56 (f) were quashed by defendants' counsel and plaintiff was not permitted discovery. Otherwise she would have had additional information to show that this fact-finding was a pretext and the suspension she received was excessive and the suspension she allegedly "served" is questionable (Ex.16). The fact-finding is in no way even a quasi-judicial forum. If it were it would have the presence of counsel, the opportunity to present evidence and cross-examine witnesses, and the tribunal's recitation of findings of fact and conclusion

of law, none of which were permitted at the fact-finding. **Hunter v. City of of Warner Robins,** 842, F.Supp. 1460 (M.D. Ga. 1994). 42 USC sec. 1983 The exhaustion of administrative remedies has not been required where the plaintiff challenged the lawfulness of the administrative system, its practical efficacy, or the adequacy of the administrative remedy. **Patsy v. Florida International University,** 634 F. 2d 900 (5th Cir. 1981) Reversed Patsy v. Board of Regents 457 U.S. 496, 102 S. Ct. 2557, 73 L.Ed2d 172(1982).

Plaintiff should not be held to an "heightened pleading standard more than what is required for a prima facia showing. The Supreme Court has ruled that in civil cases that this is the standard. **Leatherman v. Tarrant County Narcotics Intellegence and Coordination** 507 US 163 (1993). It has been determined that all the factual allegations in the complaint must be accepted as true **United States V. Gaubert,** 499 U.S. 315, 327, 113, L.Ed. 2d 335, 111 S. Ct 1267(1991). Plaintiff presents that there are genuine issue for trail of this matter.

### Defendants' contention: Plaintiff fails to state claim under  42 U.S.C §1983

Plaintiff has demonstrated all the criteria throughout this brief.  Plaintiff has shown that she was engaged in a protected activity; that the employer by second hand knowledge or some means was aware of the activity (Ex 27; May 17, 2002 email to Brian Castler noting that the issues "in another forum" no reply from him, and this is based on the adverse treatment plaintiff received at close to the same time plaintiff engaged in the protected activity), a casual connection exists between plaintiff's participation in the protected activity and the adverse employment action.  Plaintiff believes through out this brief she has satisfied this. **Monoharan v. Columbia University College of Physicians**

16

& Surgeons, 842 F. 2d 590 ( 2nd Cir 1988); Also, Cosgrove v. Sears Roebuck & Co., 9 F. 3d 1033, 1039 (2nd Cir. 1993).

Plaintiff believes she is the only person in the 501 unit office of construction who is subject to oppressive surveillance and repeated unjustified "counselings" she also is the only African-American female engineer in the office, and the only person in the office who has taken various measures through protected activities to resist the acts by which she and others have been affected by the practices of the department and the defendants in the Office of Construction. Plaintiff formed a group to address lack of promotion based on gender and race/ancestry and the impact on minorities. The illegal department practices that affected the minority group and the plaintiff was one of these issues the P-4 union (Jay Doody) also pursued once the group had formed and was purpose to address. The union was successful as featured on page one of the CSEA News September 2004 edition Vol. 37, No. 9 P. 1.. The group met from January 2001 through March 13 2001. Beginning in March 2001 defendants began acting against the plaintiff. March they offered a quasi-promotion to the plaintiff incorporating measures that were illegal. They began a campaign of trying to reprimand plaintiff on alleged sick leave usage and tardiness and placing things on outlook calendar. Plaintiff filed a Federal Complaint on April 18, 2002, by May 3, 2002 the defendants began retaliating against her. (Ex. 27) In August 4, 2003 plaintiff filed appeal, start August 6 through September 26 plaintiff pursued a method of reprimands that the pinnacle was a fact-finding that plaintiff was subject.

Defendants have failed to offer a nondiscriminatory reason subjecting plaintiff to the extreme of a fact-finding and to the extreme degree of a five-day suspension (Ex. 10).

Plaintiff herein sets for a prima facie case that "raises an inference of discrimination only because the court presume the acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors". Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case. **Furnco Construction Corp. v. Waters,** 438, U.S. 567, 577(1978) it does not appear that the defendants have met their burden of proof. If the court determines it has, plaintiff believes this matter presents genuine material issue for trial.

**Defendants contention that Plaintiff cannot establish the causal connection required under sec. 1983**

It's believed that all of the above establishes the nexus between plaintiff's protected activity and the immediate proximity and continuing actions of the defendants thereafter. Plaintiff once again presents the dates of January 2001-March 2001, April 18, 2002 and August 4, 2003 those being the times of protected activity. As soon as January 2001 plaintiff begins to be excluded from training attended by unit 501 (Ex. 21, emails to and from Fargnoli and plaintiff dated January 24 – 25 2001). March 8 2001 her involvement with legislative work is made null (Ex. 22, email to Art from plaintiff), May 3, 2002(Ex. 27(A-(F-2)), email to B. Castler from Plaintiff about duties removed) plaintiff seeing more of her duties removed. Beginning of defendants' actions against plaintiff after filing August 4, 2003 Federal appeal is August 6, 2003 ongoing for

18

defendants' actions reaching a pinnacle on August 22, 2003 resulting in the September 26, 2003 fact-finding.

**Defendants claim that individual defendants are entitled to qualified immunity.**

The defendants have the burden of showing as to this defense of qualified immunity there is no genuine issue of material fact to be tried. **Robinson v. Via,** 821 F.2d 913, 922 –23(2nd Cir 1987), it appears that the defendants have not made this assertion and neither have they offered evidence to support their position. The defendant's in light of the facts plaintiff has set forth in her complaint

Defendants' affidavits do not proffer details from which either the doctrinal or the factual reasonableness of their position toward the plaintiff's claims could be explained. **Welsh v. Wisconsin,** 644 U.S. 740, 750, 80 L. Ed. 2d 732, 104 S.Ct. 2091 (1984). They simply state that they have no first-hand knowledge of plaintiff's protected activities which does not address second-hand knowledge based on "interest or belief". It does not appear in their summary judgment motion that they have met that burden. Their submission of affidavits alluding to their lack of "personal knowledge" of plaintiff's activities, which involved matters of public concern, is immaterial in consideration of the facts plaintiff put forth in earlier pleadings showing the nexus between treatment she received immediately following her protected activities that involved matters of public and social concern. This would include and Plaintiff's testimony in deposition dated 12/13/04. Plaintiff testified that all defendants knew of her activities based on "word-of-mouth", rumor or other means which would be, in plaintiff's understanding, second hand knowledge rather than first and or personal knowledge

"Knowledge obtained through firsthand observation or experience, as distinguished from a belief based on what someone else has said".

Blacks' Law Dictionary (2nd Pocket Ed. 2001).

Evidence of personal knowledge...need not, consist of the witness' own testimony

(Federal Rule of Evidence 602).

Accordingly, plaintiff testified that defendants knew through "word-of-mouth" and rumor and any other means of her protected activities. (Ex. 28, plaintiff deposition page 136: 2-6, 7-25; 137: 1-12)

The only other means plaintiff stated defendants' knew of her protected activities was by the way she was treated or retaliated against during those times. (Ex. 29, Plaintiff's deposition page 137:8-18, 21-25; page 138: 1-1-2, 23-25; page 139: 1-3). Plaintiff testified that all her supervisors, including, James Byrnes would have known about the MIA organization by "word of mouth" or other means and that the whole department would have known about it. .

Defendants' affidavits, taken at face value, do not suffice to establish their right to the defense of qualified immunity. They did not provide information for the reasonableness of their actions for the retaliation against the plaintiff that she set forth with specific facts in her complaint and established prima facia case for retaliation withstanding defendants earlier motion for summary judgment. Qualified immunity does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent. **Hunter v. Bryant**, 112 S. CT. at 537. But is does give ample room for mistaken judgments' by protecting 'all ...**Malley v. Briggs,** 475 U.S. 335, 341, 89 L.Ed. 2d 271, 106 S. Ct 1092 (1986).

The law states: Title VII retaliation

20

"No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter."

A Plaintiff claiming First Amendment retaliation [must]demonstrate that: (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that this speech was a motivating factor in the determination" **Mandell v. County of Suffolk,** 316, F.3d 368, 382 (2nd Cir 2003)(internal quotations and citations omitted)

Furthermore, plaintiff having been denied 56(f) motion and having depositions of nonparty witnesses quashed by the defendants' attorney placed plaintiff in a precarious position to respond to qualified immunity defense. The Second Circuit has said:

"Where the claimants' description of the events suggest that the defendants' conduct was unreasonable, and the facts that the defendants claim are dispositive are solely within the knowledge of the defendants and their collaborators, summary judgment can rarely be granted without allowing the plaintiff an opportunity for discovery as to the questions bearing on the defendants' claim of immunity. See generally id.; Fed R. Civ. P. 56(f). "Here Castro …asked for an opportunity to conduct discovery. The court erred in taking the federal agents' affidavits at face value and denying discovery" **Castro v United States** 34 F3d. 106, (2nd Cir).

In **Poe v. Haydon,** 853 F2d 418, (2nd Cir) " Qualified immunity is an affirmative defense which must be pleaded by the defendant official early in litigation. A civil rights plaintiff …seeking damages against a government official in his individual capacity for

*21*

an act committed under color of law should "normally include in his original complaint all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law."

The Court has declared in **Johnson v. Jones** US 115 S. CT. 2151, 132 L.Ed 2d. 238(1995) that the a strong determining factor in matters concerning summary judgment based on qualified immunity defense is one showing sufficient evidence about a question of fact to warrant trial.   The defendants have presented none other than the affidavits of their personal knowledge of plaintiff's protected activities.

The retaliation of plaintiff complained of wa swell settled in law at the time the defendants acted.  A reasonable official in the position of plaintiff 's superiors would have known that their actions would cross the barriers of the these laws.

Plaintiff evidence is the casual nexus that exists of the times the acts were committed being close to the times plaintiff would have participated in a protected activity of filing a complaint or her activity with the MIA.  This circumstantial evidence is sufficent to meet the evidence for improper motivation for the underlying constitutional violation and shows the prohibited state of mind to withstand summary judgment on the ground of qualified immunity.  **Tompkins v. Vickers,** 26 F.3d 603 (5th Cir), **Sheppard v. Beerman** 94 F.3d 823, (2nd Cir 19960, US app lexis 23458, 12 TER Cas(BnA)49 (2nd Cir) 1996.  Defendants' action violated clearly established law at the time of their actions. In addition Supervisors at Department of Transportation are given manuals and training with regards to this type of discrimination.

Lastly, a conflict appear to arise from the heightened standard of pleading in accordance with the Federal Rules of Civil Procedure and the substantive right of

qualified immunity.  To this the Supreme Court 'has never squarely held a provision of the civil rules to be invalid on its face or as applied.' " See <u>Exxon Corp. v. Burglin</u>, 42 F.3d 948(5th Cir. 1995) (citation ommited).

Respectfully submitted by: _____

Vorcelia Oliphant, Pro Se
130 Cherry Ann Street, No. 3
New Haven, CT 06514
(203) 237 –7515

23

# <u>CERTIFICATION</u>

This is to certify that a copy of the PLAINTIFF'S MEMORANDUM IN OPPOSITION

TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT in accordance with Rule

5(b) has been mailed, U. S. Postage prepaid, this 8TH day JULY 2005 to:


Eleanor M. Mullen
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120


PRO SE Plaintiff


BY: _____
   Vorcelia Oliphant
   130 Cherry Ann Street, Unit 3
   New Haven, CT 06514
   (203) 237-7515

24