**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VORCELIA OLIPHANT, | : | CIVIL ACTION NO. |
| *Plaintiff* | : | 3:02CV700(PCD) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | | |
| DEPARTMENT OF TRANSPORTATION | | |
| ET AL. | : | |
| *Defendants* | : | March 24, 2005 |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**</u>
<u>**OF THEIR MOTION FOR SUMMARY JUDGMENT**</u>

**I.    <u>PROCEDURAL HISTORY</u>**

The plaintiff in her original complaint, brought this action against her employer, the State of Connecticut, Department of Transportation, (hereinafter "DOT") on or about April 18, 2002, alleging discrimination on the basis of national origin, race and gender and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., ("Title VII"), discrimination on the basis of a perceived illness under the American With Disabilities Act of 1990, and claims under 42 U.S.C. §1981 and §1983. (Doc. #1, hereinafter "Oliphant I"). On October 28, 2002, the plaintiff filed an amended complaint adding an additional state agency, the Department of Administrative Services, (hereinafter "DAS") and seven defendants in their individual and official capacities, James F. Brynes, DOT Commissioner; Francine Houston, DOT Principal Personnel Officer; Jo Anne Devine, Assistant District Engineer, Arthur Gruhn, DOT Chief Engineer, Engineering and Highway Operations; Brian Castler, DOT Assistant Manager of Construction; Alan Mazzola, DAS Commissioner;  Keith Anderson, DAS Human Resources Consultant. (Doc. # 26).  Pursuant to the Court's Ruling on Defendants' Motion to Dismiss (Doc.# 98), the following claims set forth in plaintiff's second amended complaint were

dismissed:  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e <u>et</u> <u>seq</u>. for

failure to promote and discrimination on the basis of race, national origin, and gender, the Equal

Pay Act of 1964, as amended 42 U.S.C. §206; the Family Medical Leave Act, 29 U.S.C. §2601

et seq.; 504 of the Rehabilitation Act, 29 U.S.C. § 794; 42 U.S.C. §1981, the Americans With

Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12112; and Conn. Gen. Stat. §46a-58(a), §46a-

60(a)(8).  The Court noted that plaintiff's claims were limited to the remaining claims under Title

VII against the defendant DOT for retaliation for filing various complaints and grievances and

under 42 U.S.C §1983 against the individual defendants for retaliation for organizing

approximately thirty individuals to seek redress for lack of promotion at the DOT based on

allegedly unlawful premises.

In a subsequent ruling, the Court  barred plaintiff from presenting evidence on numerous

issues as a sanction for failure to comply with discovery.  (Doc.# 111). The ruling included

barring evidence on the following issues:

1.    dates and specifics where her work was unfairly scrutinized or work assignments or duties or specific assignments;

2.    orchestration of any aspect of defendants' employment practices, policies and procedures in relation to plaintiff;

3.    any claim that defendant DOT blocked plaintiff from any natural career progression and advancement;

4.    any claim that  defendants participated in contractual and other relationships and agreements that subjected her to disparate treatment;

5.    any claim regarding lack of equal pay;

6.    denial of training;

7.    any evidence regarding any particular individual;

8.      specific incidents and conversations indicating deliberate actions and forethought relating to plaintiff's claims of retaliation as set forth in paragraphs 7-11 of her original complaint, including employment practices by which she and others were impacted, increased scrutiny of her work to create pretexual situations for reprimanding plaintiff or for entering information in plaintiff's personnel file, lessening or changing her work duties, denying her work tools as well as accommodations, removing plaintiff's computer from active service, blocking her from any natural career progression and advancement including promotions, selection and financial support for job specific training, leaves of absences as related to sick time usage protection as provided under state and federal law, job recruitment and advertising procedures, organizational structures and job assignments;

9.      specific occasions where defendants discriminated against her with malice and reckless indifference to her Title VII rights;

10.     emotional distress damages, and;

11.     any alleged loss, damage, suffering, injury, distress or harm sustained by plaintiff relating to issues raised in her complaint.

On February 23, 2004, plaintiff brought a second lawsuit against the State of Connecticut, Department of Transportation and six additional defendants, Michael Lonergan, Construction Administrator; James Connery, Transportation Supervising Engineer; Frank Kaminski, Transportation Engineer 3; Cory Cordula, Interim Director of Equal Opportunity and Diversity; Ines Feleciano, Affirmative Action Officer; and Wanda Seldon, Interim Personnel Administrator, all in their official and individual capacities. (Doc. #26, hereinafter "Oliphant II"). She alleged discrimination without specifying any basis and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. (hereinafter "Title VII") for filing an appeal to the Second Circuit Court of Appeals; discrimination under the American with Disabilities Act, 42 U.S.C. §12101 et seq. and §504 Rehabilitation Act, 29 U.S.C. §504 et seq.; violation of her rights under the Family Medical leave Act, 20 U.S.C. §2601 et seq. (hereinafter "FMLA"); and violation of her rights under the amendments of the Constitution.

The Court issued a ruling, dated April 27, 2004, consolidating plaintiff's second lawsuit with her first lawsuit (Doc. # 174). Defendants filed a motion to dismiss all of plaintiff's claims (Doc. # 176) which the court granted except for the Title VII retaliation claim for filing an appeal to the Second Circuit. In that same ruling, the Court held that its prior ruling (Doc. # 111) barring plaintiff from presenting evidence on certain issues stood as the law of the case in the consolidated action.

Accordingly, plaintiff's claims are limited to a Title VII retaliation claim against the defendant DOT for retaliation for filing various complaints and grievances, including an appeal to the Second Circuit, and a 42 U.S.C. § 1983 first amendment retaliation claim against the thirteen individual defendants for organizing approximately thirty individuals to seek redress for lack of promotion at the DOT.

Defendants move for summary judgment on the following grounds:

1. Plaintiff cannot prove a claim of retaliation under Title VII

2. Plaintiff cannot prove that her protected speech was a substantial motivating factor for the defendant's conduct in any adverse employment action.

3. Plaintiff's claims against the defendants in their individual capacities are barred by the doctrine of qualified immunity.

## II.    FACTS

Plaintiff was employed by the Department of Transportation since 1994 in various capacities including Cooperative Intern, Engineer Technician, Engineer Intern, Transportation Engineer I. (FACT 1). She was placed on family medical leave on October 15, 2003. (FACT 2) and thereafter filed an application for service-connected disability retirement on February 2, 2004. (FACT 3). Her application was denied by the Connecticut Medical Examining Board on

November 22, 2004, finding that Ms. Oliphant was disabled from performing the duties of

Transportation Engineer but that her illness was not caused by her work or by the individuals

with whom she interacted in State service. (FACT 4).

Throughout her employment with DOT, plaintiff  filed various complaints, grievances,

and lawsuits including an informal complaint to Robert Gordon, Director of Affirmative Action

regarding unfair treatment by a secretary in 1995, (FACT 5); a grievance regarding a testing

issue and reclassification of her position in 2000, (FACT 6);  an Affirmative Action complaint

regarding a testing issue in February 2001, (FACT 7); a complaint with the Commission on

Human Rights and Opportunities on April 2, 2001, alleging retaliatory treatment and

discrimination, (FACT 8);  a lawsuit against defendants on April 18, 2002, (FACT 9); an

affirmative action complaint regarding retaliatory treatment and discrimination under the

Americans With Disabilities Act, 42 U.S.C. 12112 on  January 30, 2003, (FACT 10); a motion

for preliminary injunction for retaliatory treatment on April 11, 2003, (FACT 11);  an appeal to

the Second Circuit Court of Appeals on August 4, 2003. (FACT 12); and a complaint with the

Commission on Human Rights and Opportunities alleging retaliatory treatment and

discrimination on March 18, 2004.  (FACT 13)**.**

Plaintiff received service ratings in the normal course of employment, none of which

were unsatisfactory and only one of which contained a fair rating for attendance. (FACT 10).

These service ratings were not grieveable under the collective bargaining agreement applicable

to Ms. Oliphant's bargaining unit.  (FACT  15).  Plaintiff also received  oral counselings on

tardiness and use of the Outlook Calendar and  two written counselings on sick leave usage.

(FACTS 16 and 17).

The only discipline that plaintiff received was a five-day suspension for misuse of state time and equipment and poor judgment in removing DOT records without permission and authorization. (FACT 23). A fact-finding was held on September 26, 2003, after plaintiff was found taking the leave slips of other state employees and copying them. (FACTS 18). Plaintiff received proper written notice of the fact-finding and was provided with union representation at the fact-finding. (FACT 19). The testimony at the fact-finding showed that plaintiff took leave slips belonging to other state employees containing information on illness, vacation, funeral leave and FMLA, dating back to 2001, and copied hundreds of said leave slips; specifically five hundred and two (502). (FACT 20).

The testimony at the fact-finding also showed that the copying of leave slips of other State employees was unrelated to the responsibilities of plaintiff's job and involved the use of State equipment and State time in violation of Personnel Memorandum 96-2. (FACT 21). The testimony at the fact-finding further showed that plaintiff had made no request for the leave slips from either her supervisor or through the Freedom of Information Act and that plaintiff entered the work desk of an administrative assistant without her approval in violation of Personnel Memorandum 96-2A. (FACT 22). Plaintiff admits that she engaged in the copying of the above-described leave slips on a DOT copying machine and did not seek the permission of any supervisors regarding the same. (FACT 24).

During the course of plaintiff's employment, specifically during the first three months of 2001, plaintiff organized thirty employees to address issues of discrimination and promotion among women and minorities employed at DOT. (FACTS 25 and 26). Her efforts resulted in the formation of a group known as Minorities In Action. (FACT 25 and 26). This group met no more than three times in a church and in the office of attorney Joseph Moniz during the first

three months of  2001.  (FACT 26).   The individuals defendants have no personal knowledge of any act at any time on the part of Ms. Oliphant to organize any groups or anyone for addressing issues of discrimination or promotion among women and minorities employed at DOT.  (FACT 27).  Plaintiff admits that defendants Houston, Mazzola, and Anderson have no personal knowledge of her organizing the thirty employees to address issues of discrimination and promotion among women and minorities employed at DOT. (FACT 28).  She also admits that she is uncertain as to whether defendant Lonergan had any personal knowledge of her organizing the thirty employees to address issues of discrimination and promotion among women and minorities employed at DOT. (FACT 29).  Finally, she alleges that the individual defendants Connery, Kaminski, Cordula, Feliciano, Seldon, Castler, Brynes, Gruhn, and Devine's personal knowledge of her attempt to organize over thirty individual through the formation of the above-described group was based on rumor and another basis that she is unable to tell "right now." (FACT 30).

### III.  <u>LEGAL ARGUMENT</u>

### A.    STANDARD OF REVIEW

Under Rule 56(c) summary judgment shall be granted to the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  The burden of demonstrating that no factual dispute exists rests on the party seeking summary judgment. See <u>Gallo v Prudential Residential Servs., Ltd.,</u> 22 F.3d 1219, 1223 (2d Cir. 1994).  Once this burden has been met, in order to avoid the motion being granted, the non-moving party must come forward with specific

facts showing that a genuine issue of material fact exists for trial. See <u>Weg v. Macchiarola</u>, 995 F.2d 15, 18 (2d Cir. 1993). A factual issue is material if its resolution could affect the outcome of the dispute. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); <u>Converse v. General Motors Corp.</u>, 893 F.2d 513, 514 (2d Cir. 1990). A party may not create its own "genuine" issue of fact simply by presenting contradictory or unsupported statements. See <u>Securities Exchange Comm'n v. Research Automation Corp.</u>, 585 F.2d 31, 33 (2d Cir. 1978).

The Court's role is to determine whether issues exist to be tried, not to try issues of fact. See <u>Balderman v. United States Veterans Admin.</u>, 870 F.2d 57, 60 (2d Cir. 1989); <u>Donahue v. Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987). The court must review the evidence in the light most favorable to the non-moving party, and draw all factual inferences in that party's favor. See <u>Terminate Control Corp. v. Horowitz</u>, 28 F.3d 1335, 1352 (2d Cir. 1994 **);** <u>Brady v. Town of Colchester</u>, 863 F.2d 205, 210 (2d Cir. 1988). Summary judgment is improper if there is any evidence in the record from which a fair inference may be drawn on a material issue of fact in favor of the party opposing the motion. See <u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994). Mere conclusory allegations, however, will not satisfy the opposing party's burden. See <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985) ("conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56"). Summary judgment may be granted when no reasonable trier of fact could find in favor of the non-moving party. See <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). In short, Rule 56 is a tool designed to "winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." <u>United National Ins. Co. v. Tunnel, Inc.</u>, 988 F.2d 351, 355 (2d Cir. 1993). "Properly used, summary judgment permits a court to streamline the process for terminating frivolous claims and to

8

concentrate its resources on meritorious litigation." <u>Knight v. U.S. Fire</u>, 804 F.2d 9, 12 (2d Cir. 1986).

### B.    PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE FOR TITLE VII RETALIATION.

In order to prevail in a Title VII retaliation claim, the plaintiff must prove the following: (1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." <u>Galdieri-Ambrosini v. National Realty & Development Corp.</u>, 136 F.3d 276, 292 (2d. Cir. 1998).

"Upon such a showing, the defendant must demonstrate legitimate reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true discriminatory motive." <u>Van Kant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 714 (2d Cir. 1996); <u>Grant v. Hazelett Strip-Casting Corp.</u>, 880 F.2d 1564, 1569-71 (2d Cir. 1989).

In order to survive summary judgment, the plaintiff must offer evidence establishing a casual nexus between the protected activity and the adverse employment action. Such a burden can be established through direct evidence of "<u>retaliatory animus</u>" or indirectly with circumstantial evidence such as discriminatory or disparate treatment following the protected act. <u>Daly v. Presbyterian Hospital,</u> 2000 U.S. Dist. LEXIS 5 (S.D.N.Y. 2000).

In the present case, defendant DOT does not dispute that plaintiff was engaged in protected activity in the filing of her various complaints and grievances, including her appeal to the Second Circuit Court of Appeals or that the defendant DOT was aware of her activities. Her

prima facie case fails, however, on her lack of an adverse employment action in her written and oral counselings and her failure to state a claim of constructive discharge. In addition, defendant DOT offers a legitimate nondiscriminatory reason for plaintiff's five-day suspension regarding which plaintiff cannot offer evidence to establish a pretext on the part of defendant DOT for any alleged discriminatory motive.

### 1. The Plaintiff Did Not Suffer An Adverse Employment Action Regarding Her Written or Oral Counselings.

In the context of a Title VII claim, the *prima facie* element of an "adverse employment action" requires more than simply an unpleasant situation. Wanamaker v. Columbian Rope Co., 108 F.3d 462 (2d Cir. 1997). The essence of an adverse employment action is some detriment to the employee's position more than mere inconvenience or an alteration of the job. Crady v. Liberty National Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993); Bowman v. Shawnee State Univ., 220 F.3d 456, 461-62 (6th Cir. 2000).

A plaintiff may prove an adverse employment action by presenting evidence of discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand or by showing that based upon an objective standard, the total circumstances of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace . . . Incidents that are relatively minor and infrequent will not meet the standard, but otherwise minor incidents that occur often and over a longer period of time may be actionable if they attain the critical mass of unreasonable inferiority." Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002).

Plaintiff has been barred from presenting any evidence of failure to promote and orchestration of defendants' employment practices, policies and procedures. (Doc. #111).

Plaintiff has been barred from presenting any evidence on promotions, lack of training, increased scrutiny of her work, lessening or changing her duties. (Doc. #111). To the extent she alleges the written and oral counselings as adverse employment actions, her claim fails. The case law is clear that any such action must be a "materially adverse change in the terms and conditions of employment…more disruptive than a mere inconvenience or an alteration of job responsibilities." Patrolmen's Benevolent Association of City of New York v. Guiliani, 310 F.3d 43, 51 (2d Cir. 2002); Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). Courts have not expanded the definition of adverse employment action to include "events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee – anything which might jeopardize employment in the future." Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir.), cert. denied 522 U.S. 932 (1997). Rather, actions such as a termination or demotion evidenced by a decrease in wages or salary, a less distinguished title, a material loss of benefits or significant diminished material responsibilities can constitute an adverse employment action. Patrolmen's Benevolent Assoc., 310 F.3d at 51.

Furthermore, it is settled law in this circuit that counseling letters, reprimands, and threats of reprimands DO NOT constitute materially adverse employment actions. Bennett v. Watson Wynatt & Co., 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001); Stembridge v. City of New York, 88 F. Supp. 2d 276, 283 (S.D.N.Y 2000). Accordingly, the counselings received by the plaintiff do not constitute adverse employment actions.

### 2. Plaintiff Cannot Prove That She Was Constructively Discharged

Plaintiff alleges constructive discharge in her claim of being forced to file for disability retirement. The United States Supreme Court recently addressed constructive discharge, holding, "an employee is constructively discharged when his employer, rather than discharging

him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." Pa. State Police v. Suders, 124 S. Ct. 2342, 159 L. Ed. 2d 204, 2004 U.S. LEXIS 4176 (June 14, 2004) quoting Terry v. Ashcroft, 336 F.3d at 151-52.

The case law generally focuses on two parts of this standard: the employer's intentional conduct and the intolerable level of the work conditions. If the employee cannot show specific intent, she must demonstrate that the employer's actions were "deliberate" and not merely "negligent or ineffective." Whidbee v. Garzarelli Food Specialities, Inc., 223 F.3d 62, 74 (2d Cir. 2000). Whether the employer's deliberate actions rendered the employee's work conditions so intolerable as to compel resignation is assessed objectively, by asking, "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" Petrosino v. Bell Atlantic, 2004 U.S. App. LEXIS 20513 (2d Cir. September 29, 2004) quoting Pa. State Police v. Suders, supra. "Absent exceptional circumstances, an employee is expected to remain on the job while seeking redress." Id.

Given the court's ruling barring plaintiff from presenting any evidence of specific incidents and conversation indicating deliberate actions and forethought relating to plaintiff's claims of retaliation, her claim of constructive discharge fails. (Doc. #111). Constructive discharge must be supported by more that the employee's subjective opinion that job conditions have become so intolerable that he or she was forced to resign. Adair v. Pfizer, Inc., 245 F. Supp. 2d 437, 444; 2003 U.S. Dist. LEXIS 1875 citing Brittell v. Dep't. of Correction, 247 Conn. 148, 178, 717 A.2d 1254 (Conn. 1998); Etienne v. Wal-Mart Stores, Inc., 186 F. Supp. 2d 129, 136; 2001 U.S. Dist. LEXIS 22956.

Most relevant to the merits of plaintiff's constructive discharge claim is the adverse ruling by the State of Connecticut Medical Examining Board, dated November 22, 2004, denying

12

plaintiff's application for service-related disability finding plaintiff to be disabled but such disability not being caused by her work or by the individuals with whom she interacted while in State service. (FACT 4).

### 3. Defendants Offer A Legitimate, Non-discriminatory Reason For Plaintiff's Five-Day Suspension And Plaintiff Cannot Produce Evidence Of Circumstances Giving Rise To An Inference Of Discrimination.

Defendants acknowledge that suspension constitutes a materially adverse employment action. However, defendants offer a legitimate, nondiscriminatory reason for plaintiff's five-day suspension based on her misuse of state time and equipment in the copying of hundreds of leave slips of employees other than her own leave slips and poor judgment in removing DOT records without permission and authorization. (FACT 23).

Furthermore, plaintiff cannot produce evidence of circumstances giving rise to an inference of discrimination. Plaintiff has been barred from presenting evidence of the orchestration of any aspect of defendant's employment practices, policies, and procedures in relation to plaintiff. (Doc. #111) . Plaintiff has furthermore been barred from presenting of any specific individual to prove disparate treatment. (Doc. #111). Put simply, the plaintiff cannot identify any evidence whatsoever that indicates a causal connection between her protected activities and retaliation by the defendants and has failed to raise a question of fact with regard to the retaliation claim.

Accordingly, plaintiff cannot establish a prima facie of retaliation based on the adverse employment action of the five-day suspension.

**C.    PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983 FOR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION.**

Plaintiff alleges that the individual defendants retaliated against her for organizing over thirty individuals to initiate legal redress for the lack of promotion based on allegedly unlawful premises at DOT.

In order for a public employee to make out a claim that she has been subjected to discipline in retaliation for First Amendment activity, she must demonstrate "that: (1) her speech was constitutionally protected [by the First Amendment], (2) she suffered an adverse employment decision, and (3) a casual connection exists between her speech and the adverse employment determination against her, so that it can be said that her speech was a motivating factor in the determination." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999); Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994).

Defendants do not dispute that plaintiff's activity amounted to protected speech. Defendants do dispute that plaintiff suffered an adverse employment action as discussed above. Defendants further dispute that even if she suffered an adverse employment action that her speech was a substantial motivating factor in any adverse employment action.

**1.    Plaintiff Cannot Establish The Causal Connection Required Under § 1983**

Assuming arguendo that the plaintiff's speech was constitutionally protected activity, her claim fails because she cannot establish a nexus between her protected activity and any constitutional violation by any of the defendants.

The third prong in Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999),  that of a causal nexus, means that the protected activity must be a "motivating factor"  for the adverse action taken by either defendant. The plaintiff must show that the adverse employment action (in this

case the five-day suspension) would not have been taken absent the protected activity. Page v. Connecticut Dept. of Public Safety, 185 F. Supp. 2d 149, 161 (D. Conn. 2002). "Causation can be established either indirectly by means of circumstantial evidence, for example by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." (Morris v. Lindau, 196 F.3d. 102, 110 (2d Cir. 1999).

Courts have attempted to draw "a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a casual connection between the exercise of a federal constitutional right and an allegedly retaliatory action. Richardson v. New York State Dept' of Corr. Serv., 180 F. 3d 426, 446-47 (2d Cir. 1999). The United States Supreme Court has cited with approval cases dismissing retaliation claims where three and four months transpired between protected activity and adverse employment action, and requiring that their temporal proximity to be "very close." Clark County School District v. Breeden, 532 U.S. 268, 273 (April 23, 2001) per curiam, reh'g denied 533 U.S. 912 (June 11, 2001) citing Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001). See e.g., Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (3 month period insufficient); Hughes v. Derwinksi, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4 month period insufficient). Accord, Hollander v. American Cyanamid Co., 895 F.2d 80, 84-85 (2d Cir. 1990) (3.5 month interval, without other evidence, is insufficient to demonstrate causation); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (3 month period alone insufficient); Garone v. UPS, 2001 U.S. Dist. LEXIS 12175 (E.D.N.Y. 2001) (no causation found in 3 month interval); Cooper v. Morgenthau, 2001 U.S. Dist. LEXIS 10904 (S.D.N.Y. 2001) (collection of cases finding temporal proximity of three and four months insufficient to establish retaliation); Pontincelli v. Zurich Am. Ins. Co., 16 F. Supp.2d 414, 436 (S.D.N.Y 1998) (2.5 months between protected activity and retaliation

insufficient to establish causation); cf <u>Key v. Wal-Mart, Inc</u>., 2004 U.S. Dist. LEXIS 21107 (one day sufficient); <u>Geter v. Greater Bridgeport Adolescent Pregnancy Pr...,</u> 2004 U.S. Dist. LEXIS 3983 (D. Conn. 2004)(one day sufficient).

In this case, there is insufficient temporal connection between the plaintiff's organizing activities for the group known as Minorities In Action in early 2001 and her five-day suspension 2003, let alone the filing for disability retirement in 2004. (FACTS 26, 23, 3). The two-year and three-year gaps create a temporal relationship that is too attenuated to create a causal relationship between the protected activity of the organizing activities of the thirty employees and the adverse employment actions of the five day suspension and the constructive discharge.

Furthermore, plaintiff cannot show retaliatory animus given defendants' lack of personal knowledge of her organizing activities and her lack of any evidence for imputing knowledge to the defendants other than rumor and another basis that she is unable to tell "right now." (FACTS 27 and 30). Indeed, plaintiff even admits that several of the defendants; specifically Houston, Mazzola, and Anderson have no personal knowledge of her organizing activities while she in uncertain as to whether defendant Lonergan has any personal knowledge of her organizing activities. (FACT 28 and 29). Accordingly, plaintiff cannot establish the causal connection required under §1983 between the protected activity of her organizing activities and the adverse employment action of her five-day suspension.

**D.     THE INDIVIDUAL DEFENDANTS  ARE ENTITLED TO  QUALIFIED IMMUNITY.**

If the Court finds that the plaintiff's §1983  claim is insufficient to satisfy a prima facie case, the qualified immunity issue need not be reached.  However, even if the Court were to find that plaintiff's §1983 first amendment retaliation claim is sufficient to withstand summary judgment, then the thirteen individual defendants are entitled to the protection of qualified immunity and summary judgment must enter in their favor.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 105 S. Ct. 2806, 2829 (1985); Giacolone v. Abrams, 850 F.2d 79, 84 (2d Cir. 1988).  "The entitlement is an immunity from suit rather than a mere defense to liability . . ." Id.  The principal purpose of the doctrine is to enable public officials to do their jobs without fear of subsequently facing liability for actions they could not reasonably have believed violated the law at the time, Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727 (1982), and to avoid disruption to effective government counsel by the burdens of litigation.  Mitchell v. Forsyth, 105 S. Ct. at 2809.  The test is one of objective reasonableness, and is determined by establishing whether a reasonable official in the defendant's position could have believed that his actions were lawful, in light of clearly established law.  Anderson v. Creighton, 483 U.S. 635,107 S. Ct. 3034, 3039 (1987).

The test is a stringent one and requires that there be a very close factual fit between the case under consideration and previous case law establishing the illegality of the action or conduct at issue in order for the law to be characterized as "clearly established."  Thus, in determining whether a particular right was clearly established, the Court must first identify the claimed right in a manner suited to the facts and circumstances of the particular case.  Anderson, 107 S. Ct. at 3039; Soares v. State of Conn., 8 F.3d 917 (2d Cir. 1993).  Then it must examine the case law of the Supreme Court and of the Circuit to determine whether, during the time period in question, the law was so clearly established that a reasonable official would understand that his actions were unlawful.  Although the precise action in question need not have been held unlawful to defeat a claim of qualified immunity, the unlawfulness must be apparent under preexisting law.  Anderson, 107 S. Ct. at 3039.

The Court must also decide whether it was clear at the time of the alleged violations of law that an exception did not permit the actions in question.  Gittens v. LeFeure, 891 F.2d 38, 42 (2d Cir. 1989).  Finally, and perhaps most importantly, even if the court concludes that the law was clearly established, the Court must determine whether it was objectively reasonable for the official to believe that his actions did not violate those rights.  Oliveira v. Mayer, 23 F.3d 642, 648-49 (2d Cir. 1994).  The subjective motivation of the officials is irrelevant to the inquiry.  Anderson, 107 S. Ct. at 3040; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).  Rather, the focus is on whether reasonable officials in the position of the defendants could have believed their actions were lawful.  Where reasonable officials could disagree, the official is entitled to qualified immunity.  Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).

The Second Circuit has held that where the underlying §1983 claim requires a showing of intent, as in a claim of unconstitutional retaliation, a government official's motive or intent in

carrying out the questioned conduct should be considered in the qualified immunity analysis. Musso v. Hourigan, 836 F.2d 736, 742 (2d Cir. 1988).

When the defense of qualified immunity is raised to a §1983 claim that is grounded in a state actor's unconstitutional motive as here, the federal district courts and Courts of Appeal have been placed in a quandary. "The 'clearly established law' and 'objective reasonableness' facets of current qualified immunity doctrine tug in opposite directions where . . . the 'clearly established law' itself contains a subjective component." Blue v. Koren, 72 F.3d 1075, 1083 (2d Cir. 1995). The Second Circuit recognizes that permitting consideration of motive could eviscerate the protection to which government officials are entitled by qualified immunity. In response, these courts have required that a plaintiff present proof of the unconstitutional motive of each defendant, and have imposed on plaintiffs a "heightened standard," requiring plaintiffs to provide particularized evidence of a direct or circumstantial nature that demonstrates the required state of mind in order to avoid summary judgment on the defense of qualified immunity.[2] Blue v. Koren, 72 F.3d at 1084. ("[T]he plaintiff must proffer particularized evidence of direct or circumstantial facts as suggested in Justice Kennedy's concurrence in Siegert v. Gilley, 500 U.S. 226, 111 S. Ct.

---

[2]    The "heightened standard" required by the Second Circuit is different from the "heightened standard" that the D.C. Circuit imposed on plaintiffs in Crawford-El v. Britton, 93 F.3d 813 (D.C. Cir. 1997), which the Supreme Court held was improper. Crawford-El v. Britton, supra, 118 S.Ct. 1584 (1998). In Crawford-El, the D.C. Circuit required a prisoner to adduce clear and convincing evidence of improper motive in order to defeat a motion for summary judgment on the ground of qualified immunity. Thus, requiring the plaintiff to meet a heightened burden of proof.

The heightened standard "required by the Second Circuit requires the plaintiff to offer specific evidence of unconstitutional motive which "we [the Second Circuit] are doubtful that it imposes a burden greater than is already required under Fed. R. Civ. P. 56…[We] confess considerable doubt as to whether the heightened standard is really heightened or is simply an application of the rule that conclusory assertions are insufficient to defeat a motion for summary judgment." Blue, supra, 1083-84. The Second Circuit's approach was impliedly approved by the Supreme Court in Crawford-El, supra.

"[F]irm application of the Federal Rules of Civil Procedure is fully warranted and may lead to the prompt disposition of insubstantial claims." Id. at 1596, quoting Harlow v. Fitzgerald, supra, 102 S.Ct. at 2739, fn. 35).

1789, 1795 (1991) supporting the claim of an improper motive in order to avoid summary judgment.")  Particularized evidence of improper motive includes expressions by the state officials regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken.  <u>Blue</u>, 72 F.3d at 1084.

While it may be clearly established that the plaintiff has a right under the Equal Protection Clause not to be treated adversely in public employment, it is equally clear that the individual defendants' conduct was objectively reasonable under the circumstances.  The plaintiff has no credible evidence to suggest that under the circumstances described above, their decisions in connection with plaintiff's five-day suspension for misuse of state time and equipment in the copying of hundreds of employee leave slips other than her own violated clearly established law.  This is especially so in light of their lack of personal knowledge of plaintiff's organizing activities of the thirty individuals to protest issues of discrimination or lack of promotion among women and minorities at DOT and plaintiff's own admission that at least four of the defendants have no personal knowledge and the remaining defendants' personal knowledge is based on nothing more than rumor and another basis that she is unable to "tell right now."  (FACTS 27-30).  There is simply no evidence suggesting an "unconstitutional motive" on the part of individual defendants.  Therefore, if the Court reaches the issue of qualified immunity, these defendants are entitled to summary judgment.

<u>**CONCLUSION**</u>

For all the above stated reasons, the defendants' motion for summary judgment should be granted in its entirety.  The defendants respectfully request that the case be dismissed.

DEFENDANTS
STATE OF CONNECTICUT,
DEPARTMENT OF TRANSPORTATION,
ET AL.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:    _____
Eleanor May Mullen
Assistant Attorney General
Federal Bar No. ct22430
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
E-Mail Address:
eleanor.mullen@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing Defendants' Memorandum In Support Of

Motion For Summary Judgment was mailed in accordance with Rule 5(b) of the Federal Rules of

Civil Procedure on this 24th day of March, 2005,  first class postage prepaid to:

> Vorcelia Oliphant
> 130 Cherry Ann St., No.3
> New Haven, CT 06514

In accordance with the Court's Supplemental Order (Doc. #2) in this matter, this certification represents only that this document has been provided to the above for her review and response, to then be returned to the undersigned for filing with the Court along with any reply thereto as may be deemed appropriate.

_____
Eleanor May Mullen
Assistant Attorney General