## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Vorcelia OLIPHANT,        :
      Plaintiff,        :
                       :
     -vs-            :     Civil No. 3:02cv700  (PCD)
                       :
STATE OF CONNECTICUT    :
DEPARTMENT OF           :
TRANSPORTATION, et al.    :
      Defendants.      :
                       :

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move [Doc. No. 167] pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure for summary judgment in their favor on the grounds that the evidence shows that there

is no genuine issue of material facts in dispute and, as a matter of law, Plaintiff cannot sustain her

burden of proof for a claim of retaliation against the defendant, the Department of

Transportation, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et

seq., ("Title VII"), or for a claim of First Amendment retaliation against the individual

defendants under 42 U.S.C. § 1983.  Defendants further argue that the individual defendants are

entitled to qualified immunity from damage claims.  For the reasons that follow, Defendants'

motion is **granted**.

## I.    BACKGROUND

Plaintiff Vorcelia Oliphant filed her original complaint ("Oliphant I") against her

employer, the State of Connecticut, Department of Transportation (hereinafter "DOT"), on or

about April 18, 2002, alleging discrimination on the basis of national origin, race and gender and

retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et

seq., ("Title VII"), discrimination on the basis of a perceived illness under the American With Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., and claims under 42 U.S.C. § 1981 and § 1983. [Doc. No. 1.] On October 28, 2002, Plaintiff filed an amended complaint [Doc. No. 26] which named as defendants an additional state agency, the Department of Administrative Services (hereinafter "DAS"), and seven officers in their individual and official capacities: James F. Byrnes, DOT Commissioner; Francine Houston, DOT Principal Personnel Officer; Jo Anne Devine, Assistant District Engineer; Arthur Gruhn, DOT Chief Engineer, Engineering and Highway Operations; Brian Castler, DOT Assistant Manager of Construction; Alan Mazzola, DAS Commissioner; and Keith Anderson, DAS Human Resources Consultant.

This Court granted in part Defendants' motion to dismiss [Doc. No. 98] and dismissed the claims in Plaintiff's amended complaint brought under the following statutes: 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; the Equal Pay Act of 1964, as amended 42 U.S.C. § 206; the Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq.; the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112; and Conn. Gen. Stats. §46a-58(a), §46a-60(a)(8). Only two of Plaintiff's claims survived the Court's ruling: Plaintiff's claim under Title VII against Defendant DOT for retaliation for filing various complaints and grievances; and Plaintiff's claim under 42 U.S.C. § 1983 against the individual defendants for retaliation for exercising her First Amendment rights by organizing approximately thirty co-workers to seek redress for their lack of promotion due to allegedly discriminatory treatment.

In a subsequent ruling, the Court barred Plaintiff from presenting evidence on numerous issues as a sanction for failure to comply with discovery. The July 21, 2003, Ruling Granting

Defendants' Motion for Sanctions [Doc. No. 111] barred Plaintiff from submitting evidence regarding: (1) any dates or specifics regarding her work assignments or duties or any unfair scrutiny of her work; (2) Defendants' alleged orchestration of any aspect of their employment practices, policies, or procedures in relation to plaintiff; (3) Defendant DOT's alleged blocking Plaintiff from any natural career progression and advancement; (4) Defendants' alleged participation in contractual or other relationships or agreements that subjected Plaintiff to disparate treatment; (5) any lack of equal pay; (6) any denial of training for Plaintiff; (7) any evidence regarding any particular individual; (8) any specific incident or conversation indicating deliberate actions and forethought relating to Plaintiff's claims of retaliation, including any employment practices by which she and others were impacted, any increased scrutiny of her work, any change in her work duties, any denial of her work tools or her computer, any leaves of absence as related to sick time usage protection as provided under state and federal law, any job recruitment and advertising procedures, or any organizational structures and job assignments; (9) any specific occasion where Defendants allegedly discriminated against her with malice and reckless indifference to her Title VII rights; (10) any emotional distress damages; and (11) any alleged loss, damage, suffering, injury, distress or harm sustained by Plaintiff relating to issues raised in her complaint.

On February 23, 2004, Plaintiff brought a second lawsuit ("Oliphant II") against the State of Connecticut, Department of Transportation, and six additional defendants: Michael Lonergan, Construction Administrator; James Connery, Transportation Supervising Engineer; Frank Kaminski, Transportation Engineer; Cory Cordula, Interim Director of Equal Opportunity and Diversity; Ines Feleciano, Affirmative Action Officer; and Wanda Seldon, Interim Personnel

3

Administrator, all in their official and individual capacities. [Doc. No. 26.] In Oliphant II, Plaintiff alleged: discrimination without specifying any basis and retaliation pursuant to Title VII for filing an appeal to the Second Circuit Court of Appeals; discrimination under the American with Disabilities Act, 42 U.S.C. §12101 et seq., and the Rehabilitation Act, 29 U.S.C. §701 et seq.; violation of her rights under the Family Medical leave Act, 20 U.S.C. §2601 et seq.; and violation of her rights under the First Amendment of the Constitution.

On April 27, 2004, the Court consolidated Oliphant I and II. [Doc. No. 174]. Defendants filed a motion to dismiss all of Plaintiff's claims [Doc. No. 167], and the Court granted the motion in part, dismissing all claims in the Oliphant II complaint except for the Title VII retaliation claim for filing an appeal to the Second Circuit. In its ruling, the Court also held that its prior ruling barring Plaintiff from presenting evidence on certain issues [Doc. No. 111] stood as the law of the case in the consolidated action. Accordingly, Plaintiff's claims are now limited to a Title VII retaliation claim against Defendant DOT for retaliation for filing various complaints and grievances, including an appeal to the Second Circuit, and a First Amendment retaliation claim brought under 42 U.S.C. § 1983 against the thirteen individual defendants for organizing approximately thirty individuals to seek redress for lack of promotion at the DOT.

On July 11, 2005, Defendants moved for summary judgment [Doc. No. 267] on the following grounds: (1) Plaintiff cannot prove a claim of retaliation under Title VII; (2) Plaintiff cannot prove that her protected speech was a substantial motivating factor for Defendants' conduct in any adverse employment action, and (3) Plaintiff's claims against the Defendants in their individual capacities are barred by the doctrine of qualified immunity. After filing an objection [Doc. No. 275] and receiving Defendants' reply [Doc. No. 284], Plaintiff moved for

4

leave to file a surreply to Defendants' motion [Doc. No. 289], which, through no fault of

Plaintiff's, was granted many months later.  [Doc. No. 312.]  Plaintiff's surreply [Doc. No. 317]

was docketed on Oct. 10, 2006.

## II.    FACTS

Plaintiff was employed by the Department of Transportation since 1994 in various

capacities, including Cooperative Intern, Engineer Technician, Engineer Intern, Transportation

Engineer I.  (Defs.' Rule 56(a)(1) Statement ¶ 1.)   She was placed on family medical leave on

October 15, 2003 (id. ¶ 2; Aff. of James Connery, dated March 23, 2005, ¶ 5) and thereafter filed

an application for service-connected disability retirement on February 2, 2004.  (Defs.' Rule

56(a)(1) Statement ¶ 3.)  On November 22, 2004, the Connecticut Medical Examining Board

denied her application.  Although the Board found that Plaintiff was disabled from performing

the duties of Transportation Engineer, it concluded that her illness was not caused by her work or

by the individuals with whom she interacted in State service.  (Id. ¶ 4.)

Throughout her employment with DOT, Plaintiff filed various complaints, grievances,

and lawsuits, including: an informal complaint in 1995 to Robert Gordon, Director of

Affirmative Action, regarding unfair treatment by a secretary (Defs.' Rule 56(a)(1) Statement ¶

5); a grievance in 2000 regarding a testing issue and reclassification of her position (id. ¶ 6); an

affirmative action complaint in February 2001 regarding a testing issue (id. ¶ 7); a complaint with

the Commission on Human Rights and Opportunities on April 2, 2001, alleging retaliatory

treatment and discrimination (id. ¶ 8); this lawsuit against Defendants on April 18, 2002, (id. ¶ 9;

Doc. No. 11); an affirmative action complaint on January 30, 2003, regarding retaliatory

treatment and discrimination under the Americans With Disabilities Act, 42 U.S.C. § 12112

(Defs.' Rule 56(a)(1) Statement ¶ 10); a motion in this Court for a temporary restraining order on April 11, 2003 (id. ¶ 11; Doc. No. 68); an appeal to the Second Circuit Court of Appeals on August 4, 2003(Defs.' Rule 56(a)(1) Statement ¶ 12; Doc. No. 126); and a complaint with the Commission on Human Rights and Opportunities on March 18, 2004 alleging retaliatory treatment and discrimination.  (Defs.' Rule 56(a)(1) Statement ¶ 13.)

_____During the course of her employment, specifically during the first three months of 2001, Plaintiff organized thirty co-workers to address issues of discrimination and promotion among women and minorities employed at DOT.  (Defs.' Rule 56(a)(1) Statement ¶¶ 25, 26.)  Her efforts led to the formation of a group known as Minorities In Action ("MIA").  (Id. ¶ 25.)  This group met no more than three times in a church and in the office of attorney Joseph Moniz during the first three months of 2001. (Id. ¶ 26.)  The individual defendants have no personal knowledge of any act at any time on the part of Ms. Oliphant to organize any groups or anyone for addressing issues of discrimination or promotion among women and minorities employed at DOT.  (Id. ¶ 27).  Plaintiff admitted in her deposition that Defendants Houston, Mazzola, and Anderson have no personal knowledge of her organizing the thirty employees to address issues of discrimination and promotion among women and minorities employed at DOT.  (Id. ¶ 28; Oliphant Cont'd Dep. at 144:14-18, 145:16-25.)  She also admitted in her deposition that she is uncertain as to whether Defendant Lonergan had any personal knowledge of her organizing the thirty employees to address issues of discrimination and promotion among women and minorities employed at DOT.  (Defs.' Rule 56(a)(1) Statement ¶ 29; Oliphant Cont'd Dep. at 138:4-14.)  Furthermore, she alleges that the personal knowledge of Defendants Connery, Kaminski, Cordula, Feliciano, Seldon, Castler, Byrnes, Gruhn, and Devine of her attempt to organize MIA

6

was based on "word of mouth." (Defs.' Rule 56(a)(1) Statement ¶ 30; Oliphant Cont'd Dep. at 136:2-138:3; 140:23-141:12; 142:1-143:20; 144:23-145:24.)

Subsequent to the formation of MIA, Plaintiff received a five-day suspension for the misuse of state time and equipment and poor judgment by removing DOT records without authorization or permission. (Defs.' Rule 56(a)(1) Statement ¶ 23.) This suspension resulted from a fact-finding held on September 26, 2003, after Plaintiff was found taking and copying the leave slips of other state employees. (Id. ¶ 18.) Plaintiff received proper written notice of the fact-finding and was provided with union representation at the fact-finding. (Id. ¶ 19.) The testimony at the fact-finding showed that Plaintiff took leave slips belonging to other state employees which contained information on illness, vacation, funeral leave and FMLA dating back to 2001, and copied over 500 of these leave slips. (Id. ¶ 20; Seldon Aff. dated Oct. 29, 2003 at ¶ 7.) The testimony at the fact-finding also showed that Plaintiff's copying of other state employees' leave slips was unrelated to her job responsibilities and involved the use of state equipment and state time in violation of Personnel Memorandum 96-2. (Defs.' Rule 56(a)(1) Statement ¶ 21; Seldon Aff. at ¶ 8.) The testimony at the fact-finding further showed that Plaintiff had made no request for the leave slips from either her supervisor or through the Freedom of Information Act and that plaintiff entered the work desk of an administrative assistant without her approval in violation of Personnel Memorandum 96-2A. (Defs.' Rule 56(a)(1) Statement ¶ 22; Seldon Aff. at ¶ 9.) Plaintiff admitted in her deposition that she engaged in the copying of the above-described leave slips on a DOT copying machine and that she did not seek the permission of any supervisor to do so. (Defs.' Rule 56(a)(1) Statement ¶ 24; Oliphant Cont'd Dep. at 103:4-9; 129:3-6.)

_____Plaintiff also received service ratings in the normal course of employment, none of which was unsatisfactory and only one of which contained a fair rating for attendance.  (Defs.' Rule 56(a)(1) Statement ¶ 14; Connery Aff. at ¶¶ 6, 7.)  These service ratings were not grievable under the collective bargaining agreement applicable to Ms. Oliphant's bargaining unit.  (Defs.' Rule 56(a)(1) Statement ¶ 15; Connery Aff. at ¶ 8.)  Plaintiff also received several oral counselings on tardiness and her use of her Outlook Calendar and two written counselings on sick leave usage.  (Defs.' Rule 56(a)(1) Statement ¶¶ 16, 17.)

## III.    STANDARD OF REVIEW

_____Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A material fact is one which "might affect the outcome of the suit under the governing law" and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue."  Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

"A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'"  Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting

8

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury.  Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).  "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment."  R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

        "At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer."  Byrnie v. Town of Cromwell, Board of Education, 243 F.3d 93, 102 (2d Cir. 2001).  Caution must be exercised before granting summary judgment to an employer in a Title VII or § 1983 case where discriminatory intent and state of mind are in dispute, see Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000),

        [i]t is now beyond cavil that summary judgment may be appropriate even in the

9

fact-intensive context of discrimination cases. . . . "[T]he salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation."

Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("Trial courts should not treat discrimination differently from other ultimate questions of fact").

## IV.    DISCUSSION

### A.    Title VII Retaliation

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." Holtz v. Rockefeller & Co., 258 F.3d 62, 79 (2d Cir. 2001) (quoting Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998)).

Defendants do not dispute that Plaintiff was engaged in protected activity in filing her various complaints and grievances, including her appeal to the Second Circuit Court of Appeals, or that Defendant DOT was aware of her activities. The Defendants argue, however, that Plaintiff fails to establish a prima facie case because the oral and written counselings she

received did not constitute "adverse employment actions" and because Plaintiff fails to state a claim of constructive discharge. Defendants also maintain that they had a legitimate, nondiscriminatory reason for Plaintiff's five-day suspension and that Plaintiff cannot offer evidence to establish that Defendants' reason for her suspension was a pretext for discrimination.

## I.    *Adverse Employment Action*

To establish an adverse employment action for purposes of a Title VII retaliation claim, Plaintiff must present evidence of a "materially adverse change in the terms and conditions of [her] employment." Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 609 (2d Cir. 2006) (internal citations omitted). The Supreme Court recently announced that to constitute a "materially adverse" change in the terms of employment, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2409 (2006). The language and intent of White appear consistent with existing Second Circuit precedent, which defines an adverse employment action as one that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal citations omitted). Examples of such adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished responsibilities. Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005). Reprimands, threats of reprimands, and excessive scrutiny of an employee, on the other hand, do not constitute materially adverse employment actions. Lucenti v. Potter, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006). See, e.g., Thompkins v. Potter, No. 3:04-cv-2021, 2006 WL 2563435, at *6 (D. Conn.

11

Sept. 1, 2006) (status check letters requesting that an employee explain her absence or suffer discipline are not adverse actions); Stembridge v. City of New York, 88 F. Supp. 2d 276, 283 (S.D.N.Y. 2000) (no actionable harm where "reprimand contained a warning that repetition of improper behavior could result in disciplinary action but contained no indication of any planned discipline or further action"); Castro v. New York City Bd. of Educ. Pers., No. 96 Civ. 6314 (MBM), 1998 WL 108004, at *7 (S.D.N.Y. Mar.12, 1998) ("[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.").

  In this case Plaintiff argues that Defendant retaliated against her after she allegedly complained of discriminatory treatment to her superiors and to DAS and she formed the group Minorities in Action ("MIA") to address the alleged lack of promotions for minorities and women employed by the Department of Transportation.  (Second Am. Compl. ¶¶ L-Q; Pl.'s Resp. at 4.)  More specifically, in support of her claim of "adverse employment action," she claims that subsequent to making her complaints and forming MIA: (1) she was not permitted to attend training seminars that previously she had been permitted to attend; (2) Defendants removed other responsibilities that she previously handled; and (3) Defendants issued oral and written counselings and other allegedly excessive scrutiny of her work.  (Id. at 7-9.)  The Court, however, has barred Plaintiff from presenting any evidence regarding Defendants' alleged failure to promote Plaintiff and the orchestration of Defendants' employment practices, policies, and procedures.  (Ruling at 6.)  Plaintiff is also barred from presenting evidence regarding promotions, lack of training, increased scrutiny of her work, and the lessening or changing of her duties.  (Ruling at 5-7.)  Accordingly, the only issue remaining is whether Defendant's issuance

of oral and written counselings amounted to an "adverse employment action."

The counseling letters received by Plaintiff in this case do not constitute adverse actions. Counseling letters, like negative evaluations or other forms of workplace reprimands, are not disruptive enough to rise to the level of "adverse employment actions." See, e.g., Lucenti, 432 F. Supp. 2d at 364; Thompkins, 2006 WL 2563435 at *6; Stembridge, 88 F. Supp. 2d at 283; Castro, 1998 WL 108004, at *7. Plaintiff herself describes the oral counselings she received as "reprimands" (Pl.'s Resp. at 8), which, as discussed above, district courts have routinely found to be not held to be not materially adverse. As a result, the Court finds that Plaintiff has failed to establish that Defendants' conduct amounted to an adverse employment action.

### ii.    *Constructive Discharge*

Plaintiff claims that she was constructively discharged and forced to file for disability retirement. "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 73 (2d Cir. 2000) (internal citations omitted). Plaintiff must satisfy two prongs of this standard: the employer's intentional conduct, and the intolerable level of the work conditions. Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004). If a plaintiff cannot show specific intent, she must at least demonstrate that the employer's actions were "deliberate" and not merely "negligen[t] or reckless." Whidbee, 223 F.3d at 74. To decide whether the work conditions were intolerable, the Court's "inquiry is objective: Did working conditions become so intolerable

13

that a reasonable person in the employee's position would have felt compelled to resign?"

Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004).

Plaintiff alleges that she had been restricted to temporary work assignments in retaliation for her forming MIA and making complaints of discriminatory treatment.  (Pl.'s Resp. at 10-11.) She further alleges that when she met with her supervisors to discuss the issue, they alleged that the purpose of the meeting was for counseling and that they had grounds to reprimand her, allegedly in part as a result of her taking time to see a doctor for work-related health problems. (Id. at 11-12.)  She also claims that her doctor documented that she suffered from stomach distress (id. at 11), and she has presented as evidence a form on which the doctor concluded that the problem "may be related to stress factors at work."  (Id., Ex. 33.)

Plaintiff, as a result of the Court's previous ruling, is precluded from introducing evidence regarding "specific incidents and conversation indicating deliberate actions and forethought relating to Plaintiff's claims of retaliation" (Ruling at 7), "the lessening or changing of her job duties" (id. at 6), or evidence of "the orchestration of defendants' employment practices, policies, and procedure in relation to Plaintiff."  (Id.)  Plaintiff's claim for constructive discharge is therefore completely unsubstantiated and cannot establish the existence of a genuine issue of material fact.

Assuming arguendo, however, that the documents proffered by Plaintiff were admissible, the Court concludes that her claim would nonetheless fail, as she has not proffered any evidence that Defendant intentionally created an intolerable work atmosphere.  Although Plaintiff describes Defendant's actions as "deliberate and not simply negligent" (Pl.'s Resp. at 12), she offers no evidence in support of this conclusory statement.  And while Plaintiff has proffered a

14

doctor's diagnosis that her stomach discomfort may have been work-related, that fact alone is not sufficient to establish a genuine issue of material fact.  See, e.g., Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 n.2 (4th Cir. 2004) (explaining that an employee is "not . . . guaranteed a working environment free of stress").  As a result, Plaintiff has failed to show evidence beyond the pleadings to establish that genuine issues of material fact remain with respect to this claim.

### iii.    *Legitimate, Non-Discriminatory Reason for Plaintiff's Five-Day Suspension*

Under Title VII, if a plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory rationale for its actions.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). Defendants concede that suspension constitutes a materially adverse employment action, but they claim that they had a legitimate, non-discriminatory reason for Plaintiff's five-day suspension based on her misuse of state time and equipment by copying hundreds of leave slips of other employees and her removal of DOT records without authorization or permission.  (Defs.' Mem. of Law at 13.)  "[O]nce the defendant has made a showing of a neutral reason for the complained of action, 'to defeat summary judgment... the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'"  Terry, 336 F.3d at 138 (citing Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997)).  Although Plaintiff argues that Defendants' claims are pretextual, the evidence that she offers is not admissible, as the Court has precluded the submission of evidence

regarding specific incidents indicating deliberate actions by Defendants (Ruling at 7), regarding

dates and specifics where her work was unfairly scrutinized (id. at 5), or regarding specific

occasions that Defendants discriminated against her.  (Id. at 8.)  As such, Plaintiff has failed to

show a pretext for Defendants' legitimate, non-discriminatory reason for her five-day suspension.

For all of the above reasons, Plaintiff has failed to raise genuine issues of triable fact on

her Title VII retaliation claim, and the Court enters summary judgment on this claim in favor of

Defendants.

### B.     First Amendment Retaliation

Defendants also move for summary judgment on Plaintiff's § 1983 claim that the

individual Defendants retaliated against her for organizing MIA in violation of her rights under

the First Amendment of the Constitution.  Defendants concede that Plaintiff's speech was

constitutionally protected activity.  (Defs.' Mem. of Law at 14.)  However, they argue that her

claim must fail because Plaintiff did not suffer an adverse employment action and because she

has not established a nexus between her protected activity and any constitutional violation

committed by the Defendants.  (Id.)  Plaintiff responds that the Defendants retaliated by

reprimanding her, subjecting her to extreme scrutiny, excluding her from training sessions, and

removing her legislative duties.  (Pl.'s Resp. at 17-18.)

"A plaintiff pursuing a claim for First Amendment retaliation must demonstrate that (1)

his speech addressed a matter of public concern, (2) he suffered an adverse employment action,

and (3) a causal connection existed between the speech and the adverse employment action, so

that it can be said that his speech was a motivating factor in the determination."  Cobb v. Pozzi,

363 F.3d 89, 102 (2d Cir. 2004) (internal citations and quotation marks omitted).  Because

Defendants concede that Plaintiff's activity was constitutionally protected, Plaintiff's evidence must show that she experienced an adverse employment action that was motivated by her protected activity in order to establish a prima facie case of First Amendment retaliation.

> ### I.    *Adverse Employment Action*

In determining what constitutes an adverse employment action, the Second Circuit applies a less demanding standard to First Amendment retaliation claims than to Title VII retaliation claims. Zelnick v. Fashion Inst. of Tech., No. 05-5131 CV, 2006 WL 2623923, at *8 (2d Cir. Sept. 14, 2006). In the context of a First Amendment retaliation claim, "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Id. (citing Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004). The Second Circuit has broadly defined "adverse employment actions" in First Amendment claims as including "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Hoyt v. Andreucci, 433 F.3d 320, 328 (2d Cir. 2006) (internal quotation marks omitted). Lesser actions such as negative evaluation letters, express accusations of lying, and various changes in job responsibilities may also be considered adverse employment actions. Zelnick, 2006 WL 2623923 at *8. A combination of "seemingly minor incidents" may form the basis of a constitutional retaliation claim "once they reach a critical mass." Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002).

Defendants maintain that Plaintiff has failed to allege any action that constitutes an adverse employment action for purposes of a constitutional retaliation claim. Defendants do not acknowledge the diminished standard, however, for First Amendment retaliation claims, and they rely on their earlier argument that Plaintiff's allegations cannot be considered adverse

employment actions pursuant to Title VII.  Nevertheless, as discussed above, this Court's prior ruling barred Plaintiff from presenting any evidence which can attest to her suffering an adverse employment action.  See supra Section IV.A.i.  Therefore, even if the Court were to accept "lesser actions" such as negative counseling letters and reprimands as "adverse actions" for purposes of a constitutional retaliation claim, Plaintiff in this case is unable to present evidence that such alleged actions occurred.  As such, Plaintiff cannot establish this element of the claim and therefore cannot make a prima facie case of First Amendment retaliation.

### ii. Causal Connection between Protected Activity and Adverse Actions

Even if the Plaintiff were to establish an adverse employment action, her claim would fail because she has failed to prove that there was a causal connection between her constitutionally protected activity and the adverse actions she allegedly suffered.  Plaintiff must show a causal connection "sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech."  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  See also Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus."  Morris, 196 F.3d at 110.  See also Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).  The Second Circuit "has not established a specific delay between protected activity and adverse employment action that defeats an inference of causation."  Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free School Dist., 411 F.3d 306, 314 (2d Cir. 2005).  See also

Gorman-Bakos v. Cornell Co-op Extension, 252 F.3d 545, 554-55 (2d Cir.2001) (listing cases in the context of Title VII retaliation).  For instance, in Hollander v. American Cynamid Co., the Second Circuit held that a delay of three months between the protected activity and the allegedly retaliatory act was fatal to Plaintiff's showing of causation, 895 F.2d 80, 85-86 (2d Cir.1990), while in Grant v. Bethlehem Steel Corp., the court found that an eight-month delay supported a showing of causation.  622 F.2d 43, 45-46 (2d Cir.1980).  The operative issue is not simply the length of time between the protected activity and the alleged retaliation but the demonstrated nexus between the two.

Here, Defendants argue that there is an insufficient temporal connection between Plaintiff's organizing activity with MIA in early 2001 and the allegedly adverse actions of her five-day suspension, which occurred in 2003, and her filing for disability retirement, which occurred in 2004.  Defendants also argue that Plaintiff cannot show the existence of any retaliatory animus because no evidence has been presented that Defendants had personal knowledge of Plaintiff's organizing activities.  (Defs.' Mem. of Law at 16.)  Despite the extraordinarily long lag time between her MIA organizing efforts and the allegedly retaliatory actions, Plaintiff  fails to offer evidence that establishes that Defendants were substantially motivated by her protected activity when they allegedly reprimanded her, excluded her from trainings, or changed her work responsibilities months or years later.  Furthermore, she fails to provide direct evidence of any retaliatory animus.  Although she has repeatedly asserted her belief that Defendants had knowledge of her work organizing MIA, she has not proffered any evidence on the issue other than her conclusory allegations.  Plaintiff therefore fails to establish the third element of a First Amendment retaliation claim.

For these reasons, Plaintiff has failed to establish a prima facie case of First Amendment retaliation. The Court therefore enters summary judgment on her § 1983 claim of First Amendment retaliation in favor of Defendants.

### C.    Qualified Immunity

Defendants argue that the thirteen individual defendants are entitled to the protection of qualified immunity. Because the Court finds that the Plaintiff has not established a prima facie case under § 1983, it need not address the qualified immunity issue raised by the Defendants.

## V.    CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment [Doc. No. 267] is **granted.** Because the Court, in grant Defendants' motion, has concluded that Plaintiff has not demonstrated genuine issues of triable fact, it does not need to consider Defendants' Motion to Strike Plaintiff's Statement of Material Facts. As such, Defendants' Motion to Strike [Doc. No. 282] is **denied as moot.**

SO ORDERED.

Dated at New Haven, Connecticut, October  20 , 2006.

/s/
PETER C. DORSEY
UNITED STATES DISTRICT JUDGE